DAVIDSON'S EXR.
vs
NUNNALLYS &c.

---

CHANCERY.

# Davidson's Executor and Heirs, &c. vs Nunnallys, &c.

ERROR TO THE EDMONDSON CIRCUIT.

Case 142.

*Frauds—statute of. Deeds of gift. Limitation. Creditors and purchasers.*

June 6.

CHIEF JUSTICE EWING delivered the opinion of the Court.

Deed of gift, B. Nunnally & wife to their children.

IN 1810, Bernard Nunnally and Nancy his wife, residents of Buckingham County, Virginia, executed, signed and sealed, and upon his acknowledgment in the County Court, had recorded, the following peculiar instrument: "This indenture, made this 11th day of November, in the year of our Lord one thousand, eight hundred and ten, we Barnett Nunnally, and Nancy his wife, doth give and bequeath unto our six children, to-wit: Robert Nunnally, Nelson Nunnally and Morris and John and Mickey and Sally Nunnally, of the other part, witnesseth, that the said Barnett Nunnally and Nancy his wife, have

received one dollar in hand, paid to them by the said Robert Nunnally, by Nelson and Morris and John and Mickey and Sally, for the true love we bear unto the children, the following negroes and increase, to-wit: Tiller and Rody, and *Judy* and Peter, to them and their heirs forever, to be equally divided among *them* at our death. We, the said Barnett Nunnally and Nancy his wife, doth further, to and with our children above named, reserve the use of the above named negroes our lifetime. We give and bequeath to our six children, above named in this deed, for the true love we bear to them, to-wit: one black horse, one sorrel mare, and one sorrel colt, three feather beds and furniture, and seven head of cattle, to them and their heirs forever. The said Barnett Nunnally and Nancy his wife, doth warrant and forever defend, a good and lawful right and title to the above mentioned slaves, horses, and beds and furniture, to them and their heirs forever: as witness our hands the day above written."

In 1817, Nunnally and wife, with the slaves and their children, removed to Barren County, Kentucky. In 1818, Bernard Nunnally sold the said slaves and their then increase to Paschal Craddock, and a short time after his purchase Craddock sold Judy to Benjamin Davidson, for a full and valuable consideration, without notice of the claim of the children. Davidson remained in the possession of Judy, and her children, born after his purchase, till his death, in 1832, after which they came to the possession of his executor, under his will. Bernard Nunnally died in March, 1838, his wife having died before, also his daughter Sally, in infancy, and without issue. In the latter part of March, 1838, immediately after the death of their father, the five living children filed their bill against Craddock, who still held some of the slaves and their increase, having sold others out of the State, and against the executor and heirs of Davidson, who held Judy and her increase, six children, for the recovery and sale and division of five-sixths of the proceeds of the sale of the said slaves, or their value among them, and the allotment of the one-sixth, the interest of Sally, which upon her death had devolved on her father, to Craddock and Davidson's representatives.

Davidson's Exr.
*vs*
Nunnallys &c.

Answers.

Craddock and Davidson's representatives answered, claiming to be innocent purchasers, for a valuable consideration, without notice of the claim set up in the bill, and resist the recovery in any and every aspect of the case.

Facts appearing in evidence.

It seems that the instrument under which the complainants claim was never recorded in Kentucky; that the purchase was made by Craddock from Bernard Nunnally, who was in possession of the slaves, claiming the absolute title, for about half their value, and with notice of the claim of the children. But Davidson purchased from him for a full and valuable consideration, and without any notice of the complainants interest in remainder.

The Circuit Court decreed in favor of the complainants, and directed a sale of the slaves, and an allotment of five-sixths of the proceeds, as well as of the hire, since the death of their ancestor, among the complainants, and the other one-sixth of the amount arising from those in the possession of Craddock to him, and the one sixth of the proceeds of those in the possession of Davidson's representative and heirs to them. Davidson's executor and heirs, and Craddock, have brought the case to this Court.

The anomalous instrument under which the complainants derive title, in form and in substance, partakes both of the character of a will and a deed of gift. And as it makes a disposition of property which is not to take effect till after the death of the donor, it might be construed to be a will, as no set form of words are necessary to constitute an instrument a will.

Character of the writing above recited.

But it may also be construed to be a deed, reserving an estate for life in himself, and limiting the remainder over to his children, to take effect at his death. And as it may be construed to be the one or the other, it may be placed in either class, and should be placed in that which would be most likely to give it operation, and in either that would make it operate to accomplish the object of its execution, as it should be construed and taken most strongly against the grantor or party making it. As a will, it was revocable, and was revoked by the sale of the slaves. As a deed, it was irrevocable, and could not be

defeated or rendered inoperative between the parties, by the single act or will of the grantor.   Giving to it the force and operation of a deed, the question arises whether, under the circumstances of the case, it can be made operative as a deed against the claim of Davidson, as a subsequent purchaser.   The latter branch of the second section of our statute of frauds, &c. provides: "And in like manner, when any loan of goods or chattels shall be pretended to have been made to any person with whom, or those claiming under him, possession shall have remained by the space of five years, without demand made and pursued by due process at law on the pretended lender; or when any reservation or *limitation* shall be pretended to have been made, of an use or property, by way of condition, reversion, *remainder* or *otherwise*, in goods and chattels, the *possession* whereof shall have remained in *another*, as aforesaid, the same shall be taken, as to the creditors and *purchasers* of the *persons* aforesaid, *so remaining in possession*, to be fraudulent within this act, and that the *absolute property* is *with* the *possession*, unless such loan, reservation or *limitation* of use or *property*, were declared by will or deed in writing, proved and recorded as aforesaid."

The deed of gift in question *limits an estate in remain-der* in the slaves to the complainants, the children of the donor, reserving an estate in himself and wife for life, with whom the possession and apparent ownership remained, and falls directly within the description of one of the classes of the cases provided for in the statute.

The following principles may be deduced from the decisions of this Court on the foregoing clause of the statute :   That it matters not whether the deed evidencing the loan, reservation or limitation, in remainder, has been executed in or out of this State; that in either case, it is the *remaining in possession*, within the State, by the loaner, or by *another* than the persons to whom the *remainder* or *reversion* in the use or property is limited for five years, without recording the instrument evidencing the loan, &c. that has the effect of rendering the loan, reversion or remainder, void, and of uniting the *absolute property* with the *possession;* that a possession

'Under our statute of frauds, it is not material whether the deed evidencing the *loan, reservation* or *limitation* in *remainder,* be executed in Kentucky or not; in either case the *remaining* in possession of another, other than the person to whom the *remainder* or *reversion* is limited for five years, without recording the instru-

DAVIDSON'S EXR.
vs
NUNNALLYS &c.

ment evidencing
the loan, &c. has
the effect of ren-
dering it void.

The recording of
such instrument
within five years
from the time the
property is bro't
in the state, takes
the case without
the statute.

Three questions
presented in this
case.

That a purchaser
of tenant for life
in a slave, where
the deed is not
recorded within

out of the State, or in another State, no matter how long it may have been held, cannot be tacked to the possession in the State, so as to make out a holding for five years, such as will render void the loan or limitation in remainder, and unite the absolute property with the possession.

That if the deed be recorded in the State, as required by the statute, before the five years expire, that the property is held and possessed within the State, that the estate in remainder or reversion may be saved from the claims of creditors or purchasers, no matter when or where the deed may have been executed: but if not so recorded within the five years, it cannot be recorded afterwards, so as to give it any force or effect against a purchaser, whether he may have become so before or after the deed is recorded in the State: *Withers* vs *Smith*, (4 *Bibb*, 170;) *Craig* vs *Payne*, (*Same*, 337;) *Ferguson, &c.* vs *White*. (1 *Marshall*, 7;) *Fightmaster* vs *Beasley*, (7 *J. J. Marshall*, 410.)

Three questions arise in this case, upon the facts exhibited: 1st. As the slaves were not possessed five years in the State by Nunnally, to whom a life estate was reserved, before he sold them to Craddock and Craddock to Davidson, but was possessed about twenty years by Nunnally and the purchasers, and the deed never recorded in the State, can the possession of Nunnally be added to the possession of the purchasers, so as to protect Davidson as a *bona fide* purchaser? Or can his purchase be protected, it having been made before Nunnally had held for five years in the State? 2d. If Craddock had notice of the remainder in the children before he purchased, or purchased for an inadequate consideration, is not Davidson, who purchased from him, *bona fide*, and for a full and valuable consideration, protected by the statute? And thereby, does the fact that the deed was recorded in Virginia supercede the necessity of placing it upon record in this State, under the provisions of our statute?

1st. It is said in the case of *Ferguson* vs *White, supra*, "as the possession for five years in another, constitutes the reservation fraudulent under the statute, no record made after the lapse of such a possession, can affect the

claims of *purchasers*, whether they may have become such *before* or *after* the making such a record." It is the possession by *another*, and the failure for five years to place the remainderman's evidence of title on record, that renders his title void, and the title of the purchaser absolute, and it can make no difference whether he has become such before or after the expiration of the time for recording; the deed is declared void as to all creditors and purchasers, without discrimination as to the *time* when they may have become such, and applies as well to *prior* as subsequent creditors. By the sale the possession of the tenant for life is transferred to the purchaser, and being held by him, is as efficacious to carry with it the absolute title and bar the remainderman, upon his failure to record his deed within five years, as if it had remained with the tenant; and he has the same power to record within the time, and the record, if made, will have the same efficacy in saving his interest and remainder: so the complainants, who held in remainder, had the same opportunity afforded them to place their deed on record within the State as if no sale and change of possession had taken place, and were warned by the sale to do so. Nor is it a greater hardship upon them to require that they should do so, as a timely warning to purchasers, sub-purchasers and creditors, or be subjected to a loss of their interest, than it is to require the absolute owners of slaves to sue within five years or be barred of their rights by the statute of limitations. It is the omission to place the deed on record that subjects their claim to the denunciation of the statute, of which prior as well as subsequent purchasers or creditors may take advantage.

2nd. The third section of the statute applies to and qualifies the clause under consideration, as well as the prior provisions of the statute, and this section has always been construed to afford protection to *bona fide* sub-purchasers, who have acquired title from a fraudulent purchaser, and much more should it be construed to give protection to one who has purchased, *bona fide*, without notice, and for a valuable consideration, from a prior purchaser, who may have acquired title with notice, and for an inadequate consideration.

DAVIDSON'S EXR.
*vs*
NUNNALLYS &c.

5 years, shall be protected against those claiming in remainder, it is not necessary that such purchase be after the lapse of the 5 years, it may be before.

The 3d section of the statute of frauds qualifies the prior provisions of the statute, and how.

DAVIDSON'S EXR.
vs
NUNNALLYS &c.

The recording a
deed of gift in
Virginia, where
the property and
parties may be at
the date there-
of, does not dis-
pense with the
necessity of re-
cording it in Ken-
tucky, (if the
property be re-
moved to Ken-
tucky) in order to
protect the inter-
est in remainder
or reversion a-
gainst creditors
and purchasers,
after a posses-
sion of tenant for
life against the
effect of 5 years
possession.

3d. Nor can we think that the fact that the deed was recorded in Virginia can make any difference in the case. Such record might give notice and afford protection to the citizens of Virginia, but can afford none to the citizens of Kentucky. The record required is a record in the State, to which our people are required to look as the means of guarding themselves from the frauds of the possessor and ostensible owner. And the statute would afford them a very poor security if they were required to ransack the musty records of other States and countries to ascertain whether a deed had not been recorded, limiting some secret interest to another than the possessor and apparent owner. The principle of the decisions of this Court which denounce a deed as fraudulent, though executed in another State, if not recorded here within five years, that the possession is held within the State, applies with little less force to a deed executed and recorded in another State or country. Such recording cannot be regarded as complying with the requisitions of our statute, which designates the place of recording within the State, and makes no saving or exception in favor of any deed that may have been recorded elsewhere, or in any other State.

The cases of
Johnson vs Se-
vier's ex'rs. and
Boon vs Dyke,
reviewed, but
not considered
as conclusive in
this case.

But upon this subject we have been referred by the counsel to the case of *Johnson* vs *Sevier's executors*, (4 *J. J. Marshall*, 140,) which is a case of a life estate and a limitation over in remainder, created by a will which had been recorded in Virginia, and the possession held by the tenant for life in this State, without recording the will here. The Court, in this case, referring to the case of *Boon and Dyke*, (3 *Monroe*, 537,) say, "the question growing out of lapse of time, was there made and decided by the Court upon facts like those existing in the present case. If the Court, in that case, had been of opinion that the statute to prevent frauds and perjuries had any application, a fit occasion presented itself to protect the defendants by bringing them within the operation of that statute. Not having done so, the conclusion results, that the Court thought the statute inapplicable, *and such is our opinion.*" The Court assuming it that the case of *Boon and Dyke* had settled the question, make no fur-ther examination of the statute or investigation on the

subject. By looking into the case referred to, we find that
no reference was made to the statute of frauds and perjuries, and looking into the facts of the case, we find that the will under which Dyke's legatees claimed was recorded in Virginia long before the separation of this State from that, and which record, consequently, the Court may have believed afforded constructive notice to the people here as well as in the residue of Virginia, and the will being properly recorded under their statute, need not to have been recorded again in any county here, though this State was afterwards separated from that—this may have been, and most likely was, the reason for the failure of the Court to make any allusion to the statute of frauds, &c.—that being the only authority upon which the decision was based in the case of *Johnson* vs *Sevier's executor*, referred to. If the case of a will, recorded in another State, bequeathing a life estate, with remainder over to another, were admitted to be analagous in principle to the case of a deed reserving a life estate, with a limitation over in remainder, and that each falls equally within the operation of our statute of frauds, which is not now necessary to be decided, yet the case referred to could not be regarded as very conclusive or satisfactory authority for the reasons given. Besides, the English, Courts have ever given a liberal interpretation to their statutes of frauds of the 13*th and* 27*th Elizabeth*, to carry out the objects and afford the security and protection to creditors and purchasers contemplated; hence, though the latter statute only declares void *fraudulent gifts*, *&c.* as to subsequent purchasers, for valuable consideration, the Courts, in furtherance of the objects and policy of the act, have declared void all *voluntary* settlements, or settlements made on no other consideration than natural love and affection in favor of all subsequent purchasers for valuable consideration, without notice, and even have extended the protection, in many cases, to subsequent purchasers, with notice of such prior voluntary settlements, when the purchase has been made upon consideration deemed *adequate*: (*Law Library*, 97-105.) But their statute only applies to the gifts, &c. of lands or real estate, and affords the protection to subsequent purchasers, only

against a prior gift or settlement of such estate only, and makes no provision for the protection of subsequent purchasers of goods and chattels.

The second section of our statute, which seems to be intended to embrace the provisions of both the 13*th and 27th of Elizabeth*, and to provide for both cases provided for in these statutes, not only applies to and embraces a gift of *lands, &c.* but also of *goods* and *chattels*; and though the succeeding clause of the section applies to and protects, in terms, only those who shall purchase the same *lands, &c.* without embracing in express terms, those who shall purchase *goods* and *chattels*, yet such gifts, &c. are declared void, not only as to those whose debts may be hindered and delayed, &c. but also those whose *estates* and *interests* shall be in any wise affected and disturbed. And allowing to the statute that liberal interpretation and construction which has been given to the English statute, it may be well questioned, whether, under the first clause of the statute, in case a voluntary settlement of goods and chattels, as in the case before the Court, has been made by a father, reserving an estate to himself and wife for life, and limiting an estate in remainder to his children, while he remains in possession, exercising as before every act of absolute ownership over it, and bringing it to this State, and continuing in possession here, exercising every act of ownership over it, as his own absolute property, whether such voluntary settlement should not be declared fraudulent and void, as to subsequent *bona fide* purchasers, independent of the latter clause of the statute upon which we have been commenting. Be this as it may, it is very certain, that indulging in a liberal construction of the latter clause, in such a case, that mere volunteers ought not to be permitted to prevail against such purchasers, unless they can show that by recording such a deed here, they have brought themselves strictly within the provisions of the statute, and have, by so doing, afforded that notice and security to purchasers which the statute contemplated. And this view of the case presents some ground of difference between a claimant under a will recorded abroad and a claimant under a deed of settlement.

As to Craddock, his right to protection as a purchaser, stands upon different ground. He purchased, as has been before said, with a full knowledge of the interest of the complainants, and purchased for about one half of the value of the slaves; and from what he said, as is proven, he looked to the probable duration of the life of the vendor, and estimated the value of the slaves accordingly, if he in fact purchased more than his life estate in the slaves. This Court, in the case of *Withers* vs *Smith*, (4 *Bibb*, 170,) decided "that it mattered not whether Smith had notice of the loan to Field, before he purchased the slaves or not, &c. for according to the plain and natural import of the language of the statute, the loan is void as to creditors and purchasers generally, without any discrimination, &c." But that was a case at law, and also of a purchaser under execution, who had a right to stand in the place of the creditor, whose debt may have been contracted upon the faith of the property in the possession of the debtor, and not the case of a purchaser from the debtor, upon private contract. In relation to the effect which notice of a prior voluntary settlement should have, or whether it should or should not have any effect upon subsequent purchasers, there has been much contrariety in the decisions of the English Courts in the construction of the statute of 27*th Elizabeth*. Able authorities are to be found on both sides of the question. But all the better authorities concur in the opinion, that the purchase, to be good, and entitled to the protection of the statute, must be *fair*, and not only for a *valuable* but for an *adequate* consideration, "at least so far adequate as to repel the presumption of fraud and overreaching on the part of the purchaser, or of collusion and contrivance between him and the seller:" *Atherton on Settlements*, (27*th Law Library*, 97–105.)

Following the construction of the English Courts upon their statute, it is clear that Craddock is not entitled to protection. He not only had notice, but purchased for an *inadequate* consideration. It is, therefore, unconscientious for him to retain; he cannot be allowed by the Chancellor to avail himself of his unconscientious bargain. He is liable and may be made to account, not

DAVIDSON'S EXR.
*vs*
NUNNALLYS &c.

A purchaser of slaves from tenant for life at an inadequate consideration, with a full knowledge of the interest of those in remainder, (though the deed evidencing their right was

never recorded in Kentucky,) held to be a purchaser *mala fide,* and bound to account to those in remainder for the property, increase and hire.

only for the slaves purchased and their increase in his possession, but also for the value of those that he has sold, if living, and their increase, and the hire of all of them from the death of Bernard Nunnally, subject, however, to a deduction of a reasonable amount for raising the young slaves from the same time.

It is, therefore, the opinion of the Court, that the decree of the Circuit Court be reversed and cause remanded, that a decree may be rendered dismissing the bill as to Davidson's executor and heirs, and that further proceedings be had and a decree rendered against Craddock not inconsistent with this opinion; and Davidson's executor and heirs are entitled to their costs in this Court.

*Owsley & Goodloe* for plaintiffs : *B. & A. Monroe* for defendants.