## Blair, &c. *vs* Dade's Executor.

ERROR TO THE DAVIESS CIRCUIT.

*Frauds, statute of. Slaves. Registry of deeds of Trust.*

JUDGE SIMPSON delivered the opinion of the Court.

CHANCERY.

*Case* 23.

*December* 30.

Case stated.

IN September, 1826, William Mayo, the father of Mrs. Ann Dade, wife of Lawrence T. Dade, executed a deed to Robert A. Mayo, as trustee, in which he conveyed to him a slave named Ellen, to hold in trust for the separate use of his daughter, Ann Dade and her children, during the life of her husband, at whose death the slave was to belong to his daughter and her heirs, absolutely.

Afterwards, in October, 1834, Lawrence T. Dade executed a deed of trust to C. C. Macon, conveying to him as trustee, for the benefit of his wife, Ann Dade, three female slaves named Nancy, Betsey and Milly.

These deeds were both duly recorded in the State of Virginia, where the parties then resided, but neither of them have ever been recorded in this State.

Lawrence T. Dade subsequently removed to the State of Kentucky, bringing with him the slaves named in both deeds, and continued in possession of them after his removal, upwards of five years; and having died in the county of Daviess, where he settled, and continued to reside until the time of his death, this suit was instituted by his executor for a settlement of his estate. The creditors insist that these slaves form a portion of his estate, and are liable to the payment of his debts, the deeds not having been recorded in this State. It is contended on the other hand, that having been duly recorded in the State of Virginia, where the parties resided at the time, it was unnecessary to record them in this State.

Under our statute of frauds, a possession of slaves for five years, has the effect, as to the creditors and purchasers of the person so remaining in possession, of uniting the absolute property with the possession, unless

BLAIR, &c.
vs
DADE'S EX'OR.

the character of the possession, and the real condition of the property is declared by deed or will in writing, proved and recorded as the statute requires.

The object of this requisition is to make known to the public, the right which the person in possession has to the property, so that an apparent ownership may not give him a delusive credit, and induce a belief that he is the absolute owner of the property, when in fact it belongs to others. This object can only be attained by a record in this State. A record in Virginia will not have the desired effect, although whilst the parties resided there, such a record was necessary to give notice, and afford protection to the citizens of that State.

In the case of *Ferguson, &c.* vs *White*, (1 *Marshall*, 7,) it was held, that although the writing was executed out of the State, yet a possession of the property for the space of five years within the State, will have the vitiating effect of making void the pretended reservation, as to the creditors and purchasers of the person possessed, unless declared and recorded as required by the statute.

And in the case of *Davidson's executor* vs *Nunnallys, &c.*, (3 *B. Monroe*, 540,) it was decided that recording a deed of gift in Virginia, where the property and parties were at the date, does not dispense with the necessity of recording it in Kentucky within five years, for the purpose of saving it from the operation of the statute of frauds, if the property be removed to this State.

The effect of the statute of frauds is to unite title with a possession of five years, so far as creditors or purchasers are concerned, unless the terms of the possession be made matter of record within this State. (1 *Mar.* 7; 3 *Ben. Monroe*, 540.)— Recording in another State will not protect the property in Ky.

Inasmuch, therefore, as the aforesaid deeds, made for for the benefit of Mrs. Dade, were not recorded in this State within five years after the removal of the property to Kentucky, and the property remained in the possession of the husband for more than five years after his removal, it became liable for the payment of his debts, unless as is contended, there is in the nature of the estate, created by the deeds, something to exempt the property from the operation of the statute.

As the trust was created by one of the deeds, for the benefit of the wife and children, and by the other, for the use of the wife, it is insisted that the property should be regarded as in their possession, or held by the hus-

band and father for them, and therefore not liable for the payment of his debts.

According to the plain import of the statute, the fact of being possessed of the property for the period of five years, has the operation of making fraudulent and void as to creditors and purchasers, all pretended reservations and limitations, either of the use or property, and unites the absolute property with the possession. A possession by the husband, for the benefit of the wife, the nature of the possession remaining unknown, would operate as injuriously upon the rights of the public, and afford as much scope for the perpetration of wrong by the husband, as a possession of any other description. It was, therefore, decided in the case of *Craig* AS *Payne*, (4 *Bibb*, 337,) that a possession of a slave by the husband, obtained from the trustee of the wife, although in the execution of a trust of which he was invested for the benefit of the wife, was within the legal operation of the statute, and subjected the slave to the payment of the husband's debts, there being no declaration by deed or will upon record evidencing the character of the possession.

This Court has decided, that where a gift is made to an infant and the father takes possession, he holds as natural guardian of the child, and the possession must be considered the possession of the child; and consequently, the property is not liable for the father's debts. There is a clear and marked distinction, however, between the two cases. Here a trustee was appointed to control and manage the property. He was invested with the legal title, and had a right to make any disposition of it not inconsistent with the object of the trust. The husband had no power over the property; he had no right to its possession either for his wife or children; nor was such possession necessary for its preservation. Had the deeds conferred such right, still a record of them would have been requisite for the purpose of apprising the public that the property did not belong to him. In the other case, the title of the property was in the infant, whose person and estate were under the control of the father. The infant resided with the

BLAIR, &c.
*vs*
DADE's Ex'or.

The property being in the possession of the husband and the wife, the *cestui que trust* would not dispense with the necessity of recording the deed of trust. (4 *Bibb*, 337.)

But if a gift be made to an infant, the father being the natural guardian, will hold as such for the benefit of the infant.

father, whose possession and control were necessary for the preservation of the property.

There is nothing, therefore, in the nature of the estate, or in the trusts created by these deeds, which has the effect of exempting from the legal operation of the statute, the slaves conveyed; but they, and their children born subsequent to the execution of the deeds, by remaining in the possession of the husband, after his removal to this State for more than five years, became liable for the payment of his debts.

The creditors, by a cross bill filed in this suit, seek to hold the executor responsible for these slaves. He resists the claim, denies that he regarded them as belonging to his testator's estate, or ever acquired possession of them as executor; and contends that they actually belong to Mrs. Dade, and are not assets in his hands.

There is no evidence that the possession of the slaves by Dade in his lifetime, was adverse to the right of the trustee, or the *cestui que trust*, so as to invest him with the title to them in opposition to the rights of the claimants under the deeds. On the contrary, it is in proof that he recognized the title of his wife, and did not claim the slaves as his own    Although, therefore, as was decided in the case of the *Commonwealth* vs *Richardson and others*, (8 *B. Monroe*, 96,) the possession may have placed the title in Dade as to his creditors, yet as the possession was not adverse to the trust, so as to have enabled him to resist the action of the trustee, this statutory title did not pass to his executor, by mere force of law, and consequently the executor is not guilty of a *devastavit* in not having asserted a claim to the slaves.

But as the statute creates this title for the benefit of creditors, they have a right to subject the property to the payment of their debts whilst it remains in the possession of the debtor, and may follow it for this purpose into the hands of the owner. The Court of Appeals of Virginia, upon their statute, which is similar to ours, has decided that five years' possession under a loan, vests a title in the loanee, which enures to creditors, which cannot be divested as to them, by a return of the

The executor of one who held possession of slaves, so long as that they were liable to his debts—but who did not hold adversely to another who claimed the right, cannot assert title, tho' the creditors might. (8 Ben. Monroe, 96.)

—But any slaves of which he may have the possession, are liable at the instance of creditors.

slaves after the expiration of five years: (5 *Munford*, 101.) This is evidently the correct doctrine, otherwise property which had the effect of creating a false and delusive credit, and thereby producing all the mischief intended to be guarded against by the statute, might be withdrawn from its operation by a mere change of possession from the hands of the debtor, to the person claiming the benefit of the reservation or limitation upon its use and enjoyment.

Although, therefore, the creditors cannot subject the executor to the consequences of a *devastavit*, yet as he has a portion of the slaves in his possession, they are subject in his hands, to the payment of the debts of his testator. It is true he states that he purchased them from Mrs. Dade after the death of her husband. It does not appear, however, that he has paid the purchase money, nor would it be material, as he was fully apprised at the time of his purchase, of all the facts upon which the right of the creditors is based. And as the creditors were enjoined in this suit, from proceeding against him as executor at law, and also occupied the attitude of defendants, asserting by cross bill, a claim, connected with the matters presented in the original bill, there is no valid objection to the jurisdiction of a Court of equity.

Mrs. Dade and her children and the trustees, were made defendants to the cross bill. Part of them being non-residents, a warning order was made against them, but no traverse appears to have been entered. Upon the return of the cause to the Court below, the Clerk should correct this omission. The Court dismissed the cross bill refusing the creditors any relief. According to the views here expressed, this was clearly erroneous.

Wherefore, the decree of the Court below dismissing the cross bill, is reversed, and cause remanded for further proceedings, in conformity with this opinion.

*B. & A. Monroe* for plaintiffs; *J. & W. L. Harlan* for defendant.