McCLANAHAN
*vs.*
BEASLEY.

---

## McClanahan *vs.* Beasley.

APPEAL FROM GARRARD CIRCUIT.

Case 14.

PET. EQ.

1. A separate estate in slaves may be secured to a married woman by
parol.
2. A married woman may, with money coming to her in her own right,
before the husband gets it into his possession, with the husband's
consent, vest it in property to be held to her separate use. And
though the legal title may vest in the husband, he will hold it as a
trustee, to the separate use of the wife.
3. In order to protect property in which the wife acquires a separate
estate, by parol contract, where the title vests in the husband,
from liability for his debts, where it remains in his possession for
five years, it is necessary that the character of his holding be de-
clared by writing and duly recorded; otherwise it will be liable for
the husband's debts.
4. The holding a slave thus sold or given to the wife for a less time
than five years will not render it liable for the husband's debts.

[The facts of the case are given in the opinion of
the court.—REP.]

*Geo. W. Dunlap* for appellant—

The appellee had an execution levied upon a
negro girl, Martha Jane, as the property of Joseph
Hopper, and took the slave out of his possession. Up-
on the trial of the right of property in the slave,
judgment was rendered in favor of the appellee, and
the slave ordered to be sold. From that judgment
an appeal was taken, and a reversal is asked on the
following grounds:

McCLANAHAN
vs.
BEASLEY.

1. The title to the slave has once been adjudicated in a suit between McClanahan, the appellant, and O'Bannon, and found to be in the appellant, McClanahan, (*MS. opinion of* 1852,) for the purposes of a trust in behalf of Mrs. Hopper.

2. The girl was purchased by Mrs. Hopper with part of her patrimony derived from her father's estate, which never came to the hands or possession of her husband. Hopper, at the time of the purchase of the slave by his wife, refused to have anything to do with the fund, or with the purchase when it was made. The fund arose from property devised to his wife for life, and restricted to her enjoyment to her separate use; and the possession of Hopper was that of trustee; and the circuit court erred in its instructions in not taking that view of the case.

3. The property received by Mrs. Hopper in lieu of the fund devised partook of the nature of that fund, and was not changed by any act of Hopper or his wife; and Hopper's possession was but that of a trustee, and the right in his wife as *cestui que trust*, and it was not liable for his debts.

*A. A. Burton* for appellee—

1. The will and codicil of William Dunlap, under which the appellant claims, does not create a separate estate in Mrs. Hopper in the slave in contest, as decided by this court in December, 1852.

2. The gift of the slave by Wm. Dunlap to his daughter, passes an absolute fee, unless she should have children, an event not now probable. Hopper having obtained possession of the girl, Martha, in controversy, and her mother, Eliza, given to his wife by the will of William Dunlap, in 1844, they were absolutely his property, and liable for his debts.

3. The testimony of Tho. G. Dunlap shows that the girl, Martha Jane, now in contest, was born of the girl Eliza, devised to Mrs. Hopper by her father in his lifetime, and at the sale of his property purchased by Mrs. Hopper with money bequeathed to

her by her father. It is true he says the purchase was for her separate use; it was, however, made with money which Hopper had a right to collect or retain. The limitation of it to Mrs. Hopper's children being invalid, on account of the unqualified use of it, and not of the interest, being given. It was to be consumed in the use. No trustee interposed. The nature of her estate—a separate estate, resting in parol eight or ten years, and known, if it really existed, in parol only, Hopper, during all that time, exercising ownership over the slave—rendered the transaction, as to his creditors, fraudulent.

4. But if the foregoing view be not correct, the sheriff had a right to the possession of the slave, to sell whatever right Hopper had in her; and he clearly had a life estate, and the finding of the jury was right.

5. McClanahan could maintain no suit for the girl as trustee of Mrs. Hopper in 1848. If the girl was the separate property of Mrs. Hopper, Hopper had no interest, and could convey none to McClanahan, and his deed to McClanahan is void. If Hopper had any interest, the deed is declared fraudulent and void in the suit of O'Bannon and McClanahan.

Judge SIMPSON delivered the opinion of the court:

The principal question in this case is, can a separate estate in slaves be vested in a married woman by a verbal sale, or must such an estate, in order to be valid, be created by deed or some other instrument of writing?

As the title to slaves will pass by a verbal sale in the same manner that the title to any other personal property will, it would seem to follow as a necessary consequence that the nature of the estate intended to be vested in the vendee can be as fully defined and determined, by the terms of a verbal sale, as they can be by an instrument in writing. The only difference is, that a writing furnishes testimony of a more permanent and certain character, of the nature

VOL. XVII.     8

*Margin notes:*

McCLANAHAN
vs.
BEASLEY.

June 19.

1. A separate estate in slaves may be secured to a married woman by parol.

McClanahan
*vs.*
Beasley.

and terms of the sale, than a mere verbal contract does. The title will, however, in either case, vest in conformity with the terms and stipulations of the contract.

In this case it appears that the slave in contest was, by a verbal contract, sold to Mary Jane Hopper, as her own *separate estate*, by her father's representatives, with the assent of her husband, and was paid for out of the money in the hands of said representatives, to which she was entitled as one of the residuary legatees. As that money had not been reduced to possession by the husband, and his wife was in equity entitled to it, the transaction is not liable to the imputation of fraud; nor did the arrangement violate any legal principle. The slave never belonged to the husband; the purchase was made by the wife herself, in her own name, for her own separate use and benefit, and the price was paid out of a fund that belonged to her.

2. A married woman may, with money coming to her in her own right, before the husband gets it into his possession, with the husband's consent, vest it in property to be held to her separate use. And though the legal title may vest in the husband, he will hold it as a trustee, to the separate use of the wife.

As the sale to the wife was made in 1844, the legal title to the slave vested in the husband under the law then in force; but he held it as the trustee of his wife, and she was invested with a *separate estate* in the property.

The possession of the slave was delivered to the wife at the time of the sale, and as that possession was continued by the husband, who used and controlled the slave as his own, the question arises, will a possession under such circumstances, if continued for five years, subject the property to the payment of the husband's debts, if the existence of the trust be not declared by an instrument of writing duly recorded, as required by the statute?

3. In order to protect property in which the wife acquires a separate estate by parol contract, where the title vests in the husband, from

Under the law in force previous to the passage of the act of 1846, the slaves of the wife vested in the husband, and became his absolute property, with the exception of those in which she was invested with a separate estate. And even as to the latter, the legal title to them, unless there was some other trustee, vested by operation of law in the husband, inasmuch

as the separate estate of the wife was only an equitable interest.   The presumption, therefore, was, that a slave in the possession of the husband was his property, although that presumption does not arise since the passage of the act of 1846, if the slave belong to the wife under the provisions of that act. But where such a presumption did arise, the possession of the slave by the husband, in which the wife had a separate estate, came fully within the mischief that the statute intended to guard against, and if such a possession were continued for five years, the property, under the statute, became liable for the husband's debts.

McClanahan
vs.
Beasley.

liability for his debts, where it remains in his possession for five years it is necessary that the character of his holding be declared by writing and duly recorded; otherwise it will be liable for the husband's debts.

In the case of *Craig vs. Payne*, 4 *Bibb*, 337, the court decided, that although the husband acquired the possession of the slave from the trustee of the wife, and in the execution of a trust, for her special use and benefit, nevertheless, if the possession thus acquired continued five years, the property thereby became subject to the execution of the husband's creditors, unless the existence of the trust and limitation of the use for the benefit of the wife were declared by will or deed in writing, duly executed and recorded as required by the statute.   That according to the plain import of the statute, it was not the mode by which the possession was acquired, but the being possessed for the space of five years, which had the constructive operation of making fraudulent and void all pretended reservations or limitations, either of the use or property ; and that therefore being possessed, although under a trust, came strictly within the letter of the statute, and could not, by any principle or rule of construction, be taken out of its legal operation.   The same principle was decided in the case of *Blair, &c. vs. Dade's ex'or*. 9 *B. Mon.* 61.

It therefore becomes necessary to inquire whether the slave in controversy, although the separate estate of the wife, had continued in the possession of the husband for such a length of time as to make her liable for the payment of his debts.   He appears to

have acquired the possession in the year 1844, in the county of Fayette, and to have taken the slave with him to the county of Garrard, where he resided, and to have continued the possession there until sometime in 1848, when the slave, as the testimony conduces to prove, was taken back to Fayette county—having been previously conveyed by the husband to McClanahan, the appellant, who resided in the county, to hold in trust for the separate use of the wife; and that he, as trustee, obtained the possession of the slave in a few days after the execution of the deed of trust, and kept her in the county of Fayette where he resided, for some considerable time, how long does not certainly appear, but it may be inferred from the testimony that she was not sent back to Garrard county, where Hopper still continued to reside, until sometime in the year 1850, after the suit in Fayette, between the trustee and the sheriff of that county, in which the question of the liability of the slave for the payment of the husband's debts was involved, had been decided in favor of the trustee. After she was sent back to Garrard county, she continued in the possession of Hopper until the execution was levied upon her, in 1852—the levying of which gave rise to the present action.

4. The holding a slave thus sold or given to the wife for a less time than five years will not render it liable for the husband's debts.

The possession, to subject the property to the payment of the husband's debts, must have been continued by him, without interruption, for a period of five years. A possession of that duration not all occurring at one time, but at different and distinct intervals, is not sufficient to produce that effect.

In this case it appears that the possession in the first instance only continued about four years. The slave then went into the possession of the trustee, and after some time had elapsed was again placed in the possession of the husband. It does not appear that during the last mentioned period the nature of the possession of the husband, and the fact that the use of the property was in the wife, were declared by an instrument of writing duly executed and re-

corded as required by the statute; nor even that the deed of trust heretofore referred to, although recorded in Fayette, had been recorded in Garrard county. But at the time the execution was levied on the slave, she had not, according to the testimony, been in the possession of the husband, at any one time, for a period of five years.

The objection made to the right of the trustee to maintain the action in his own name is entirely groundless and invalid. The legal title to the slave vested in the husband, and was not in the wife, whose estate in the property was exclusively equitable; and by the deed of the husband the legal title vested in the trustee. He had, therefore, a right to bring the action in his own name, and to prosecute it for the benefit of the *cestui que trust* under the 33*d section of the Civil Code, page* 11.

The deed was read without objection, and therefore the question whether it could be read as a recorded instrument does not arise in this case.

The exposition of the law contained in the instructions given to the jury by the circuit judge was inconsistent with the principles herein stated, and the verdict and judgment are not sustained by the law of the case and the evidence in the cause, and therefore a new trial should have been awarded.

Wherefore, the judgment is reversed, and cause remanded that a new trial may be granted, and for ·further proceedings consistent with this opinion.