CASE 16—MOTION—JANUARY 10.

# Kaye vs. Tydings, &c.

APPEAL FROM BULLITT CIRCUIT COURT.

Five years possession in this state by a trustee appointed by decree of court in Virginia to hold slaves devised in that state for the sole use of a *feme* during her life with remainder to her children—the will and decree being of record in Virginia, where the slaves then were, but not recorded here—rendered the slaves subject to his debts under the latter clause of the second section of the statute of 1796 against frauds and perjuries. (1 *Stat. Law,* 739.)

Uses, or reservation of uses, created by wills, are embraced by the statute, *supra;* and the act applies to property acquired and held under foreign wills or decrees. The ruling in *Johnson vs. Sevier,* (4 *J. J. Mar.,* 140,) not authoritative.

The act, *supra,* applies to all uses or property in personal property, whenever the possession thereof shall have remained in another in this State for the period of five years, where the requisitions of the statute have not been complied with, without regard to the *manner* in which the property was acquired or held, or the character of right or interest.

Where a will declaring a trust in slaves in another State, is made and recorded there, and a decree of a court is rendered there appointing the trustee, a copy of such will, and the proceedings of the court admitting it to probate, and also of the proceedings appointing the trustee, may be duly authenticated under the act of congress of 1790, and, with such authentication, admitted to record in this State—upon the removal of the trustee with the property here—under the act against frauds and perjuries, which contemplates the registration of such documents with a view to carry into effect the object of the law.

*Quere.* Will notice to a creditor, before the creation of the debt, that property of which the debtor has had possession for five years in this State, was held by him as trustee for the sole use of another, under a will made and recorded in another State while the property was there, but not recorded here, affect the right of the creditor to subject the property to the satisfaction of the debt?

A husband is incompetent to testify in behalf of his wife. (*Civil Code, sec.* 670, *sub-division* 4.)

T. A. MARSHALL, for appellant, cited *act of* 1796, *sec.* 2; 1 *Stat. Law,* 739; *Withers vs. Smith,* 4 *Bibb; Craig vs. Payne,* 4 *Bibb; Ferguson vs. White,* 1 *Marsh; Fightmaster vs. Beasley,* 7 *J. J. Mar.; Davidson's exe'r. vs. Nunnelly,* 3 *B. Mon.; Commonwealth vs. Richardson,* 7 *B. Mon.; Blair vs. Dade's exe'rs.,* 9 *B. Mon.; McClanahan vs. Beasley* 17 *B. Mon.,* 4 *B. Mon.* 445; *sec.* 13 *Statute of Wills of* 1796–7.

BUSH and STOUT, on same side.

PIRTLE & ROBERTS, for appellees, cited 3 *Mon.*, 537; 4 *J. J. Mar.*, 140; 3 *B. Mon.*, 534; *2d section of act of* 1796; 1 *Statute Law*, 739; 5 *J. J. Mar.*, 468; 4 *B. Mon.*, 445; 1 *Stat. Law*, 740, 741; 4 *Dana*, 258; 3 *B. Mon.*, 218; 4 *B. Mon.*, 451; *Ib.*, 244; 8 *B. Mon.*, 442; 17 *B. Mon.*, 631; 8 *B. Mon.*, 91.

JNO. W. TYDINGS, on same side, cited 3 *Mon.*, 537; 4 *J. J. Mar.*, 140; *Stat. of Frauds* 1796, *sec.* 2; *Rev. Statutes pages* 551–2, *sec.* 4.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

Charles Binns, of Loudon county, Virginia, died in December, 1800, leaving a last will, which was duly admitted to probate in said county and State in July, 1801.

By the 10th clause of said will the testator gives to his son, Charles Binns—subject to certain uses thereinafter named—a negro woman called Rachel, daughter of Sarah, and also a negro girl of two years of age, or the value thereof to be made up, &c.

In the 11th clause the rest of the testator's slaves he directs to be divided between three daughters named and his son Charles—the son's part to be held subject also to certain uses and trusts, subsequently named.

In the 13th clause the testator declares said uses and trusts to be as follows: "For the sole use and benefit" of testator's grand-daughter, "Elizabeth Alexander Lane Adams, during her life, and, after her death, to the use of her children and their heirs forever"—and if no child then to other persons, &c.

The *cestui que trust*, E. A. L. Adams, afterwards intermarried with Richard Tydings, who, in 1825, was, by decree of the Loudon county court, appointed her trustee, under the will, in place of Charles Binns, who renounced or gave up the trust. The proceedings of the county court furnish no description by name or otherwise of the slaves then held in trust.

In 1825 or 1826 Richard Tydings and wife moved to Kentucky, bringing with them the slaves alleged to have been held under the trust, and said slaves, with their increase, remained in the ostensible possession and control of said Richard Tydings in this State, without any registration of the will

creating the trust, or the decree changing the trustee, until January, 1859, when both were recorded in the clerk's office of the county court of Bullitt county, where Tydings and wife then resided.

Before these papers were thus recorded, Howard and Jesse, two boys about fifteen years of age, said to be descendants of one of the slaves named in the trust, had been levied on as the property of Richard Tydings, under an execution in favor of F. A. Kaye against C. B. and Richard Tydings. But they were claimed as the property of Mrs. Tydings and not subject to execution, and a bond executed under that claim for their forthcoming; and a notice had been served by Kaye of a motion to be made by him in the Bullitt circuit court for judgment upon the bond.

Upon the trial of that motion copies of said will and decree were offered and used as evidence, and Kaye's motion overruled and dismissed. From that judgment he has appealed.

The only question to be considered is, whether or not said slaves were subject to Kaye's execution.

For appellant, it is claimed, that they were subject under the latter clause in the second section of the act of 1796 against frauds and perjuries, (1st *Digest*, 739,) because of the long possession of Tydings without record evidence of the use or property in another than the possessor.

On the other side it is said (1) that the act does not apply to uses or reservation of uses created by wills, and was not so intended by the legislature; and (2) if it did, that this case is exempt from its operation, because Kaye, before the creation of the debt had notice of Mrs. Tydings' right to the property.

The clause of the act relied on reads as follows:

"Where any reservation or limitation shall be pretended to have been made of an use or property by way of condition, reversion, remainder or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid, so remaining in possession, to be fraudulent within this act, and that the absolute property is with the possession, unless such loan, reservation or limitation

of use or property were declared by will or deed in writing, proved and recorded as aforesaid."

It seems to be conceded that the reservation or limitation of the property to the sole use of Mrs. Tydings during her life, with remainder to her children, comes within the class of limitations mentioned in the act, and unless it can be relieved from the operation thereof, upon one or the other grounds relied on by appellee, there is no escape from the conclusion that it was subject to the execution.

It is contended that this court, in *Boon vs. Dykes*, (3 *Mon.*, 537,) and in *Johnson vs. Sevier*, (4 *J. J. Mar.*, 140,) has decided that the act does not apply to property acquired and held under foreign wills.

To this it may be replied, that in the first named case, no allusion whatever is made to the act, nor does there seem to have been any question raised involving, in the least, its scope or effect. It is true that in the latter case it is assumed that the point was made in *Boon vs. Dykes*, and authoritatively decided, and upon that assumption the ruling in *Johnson vs. Sevier* is made to rest; but as remarked by the court in *Davidson vs. Nunnally*, (3 *B. Mon.*, 541,) in regard to the effect to be given *Johnson vs. Sevier* upon this point, "it cannot be regarded as very satisfactory or conclusive authority." And in *Davidson vs. Nunnally* the question, now made, was not only considered as undecided, but expressly left so. Neither has it been settled in any subsequent case that we have been able to find.

It seems to us, however, that both the reason and policy of the act, as well as its plain import and language, demand its application to all uses or property in personal property, whenever the possession thereof shall have remained in another in this State for the period of five years, without regard to the manner in which it was acquired. No exception is made in the act in favor of any character of right or interest, nor as to the mode of acquiring or holding the same; and it is manifest that a discrimination in favor of property or uses, held under a foreign will or decree, and not recorded here, would, to that extent, open the way to the very mischiefs designed by the Legislature to be prevented.

The object of the enactment was to protect the public from imposition and fraud, by requiring the possessor of personal property to make kown the extent of the interest of another therein, so that his apparent ownership might not give him a delusive credit by inducing a belief that he—the possessor—was the absolute owner of the property when, in fact, it belonged to others—an object alone to be attained by a registration, such as the law requires.

In *Craig vs. Payne*, (4 *Bibb*, 337,) where an attempt was made to shield the property from the husband's debts, and exempt it from the operation of the act in question, upon the ground that he held it as the property of the wife in execution of a trust, the court held that such holding or possession, though acquired under a trust and continued in execution thereof, did not relieve it from the law, and decided that it was subject to the execution against the husband, because the trust had not been recorded; and, in remarking upon the scope and effect of the act, used the following emphatic language:

"According to the literal and plain import of this branch of the statute, it is not the *mode* by which the possession is acquired, but the being possessed for the space of five years, which has the constructive operation of making fraudulent and void all pretended reservations and limitations, either of the use or property, and unites the *absolute* property with the possession."

And in the same case the court proceed to say, in effect, that to remedy the evils intended to be provided against by statute, cases might be regarded as being within its operation though not embraced by the letter; but that to exclude, by construction, a case within the letter, because the possession was procured and held under a trust, would be altogether inadmissible. The general rule of construction here laid down, and adopted with a view to effectuate completely the object of the law, has been adhered to in many subsequent cases, and, so far as we know, never departed from. (1 *A. K. Mar.*, 5; 3 *B. Mon.*, 542; 9 *B. Mon.*, 63; 17 *B. Mon.*, 114.)

In numerous cases has the law been applied to uses or limitations created by deeds executed in other States and not re-

corded here, and no good reason is perceived for exempting property or uses held under foreign wills or decrees from its operation. The suggestion that such documents could not be duly registered in the proper county in this State, overlooks the act of congress of 1790, which provides for the authentication of records and judicial proceedings, under which a copy of the will and the proceedings in the county court admitting it to probate, and also of the proceedings appointing Tydings trustee, might have been duly authenticated, and, with such authentication, would have been admitted to record under the act of 1796, *supra*, which clearly contemplates the registration of such documents, with a view to carry into effect the main object of the law.

As to the effect of the supposed notice to Kaye of Mrs. Tydings' interest in the slaves, it is extremely questionable whether such notice, if fully proved, would in any wise affect his right to subject the property—he being a creditor—because, as decided in *Craig vs. Payne*, *supra*, and in *Withers vs. Smith*, (4 *Bibb*, 171,) the five years possession invests the party holding the property with the absolute right to the same as to creditors. And in the latter case the court decided that as between a purchaser under execution, and the claimant of the property, it would not permit an inquiry as to notice, saying that to exempt property clearly within the act, because the purchaser may have had notice, would be forming an exception to the operation of the law, which the legislature had not seen fit to make, and would open the door to the commission of perjuries in litigating the fact of notice, and in ascertaining the time when the debts of the person in possession were contracted—evils which the framers of the law must have designed to prevent, and which alone can be done by excluding such inquiries.

The reason for excluding such inquiry in the case mentioned would seem to apply with equal force to the one in hand, but whether it does or not, or whether the rule mentioned has been somewhat modified, we need not decide, as in our opinion the evidence on the subject of notice is wholly insufficient.

The evidence of Richard Tydings, the trustee, in behalf of his wife, was clearly inadmissible, because of his incompetency as a witness. He is expressly excluded by the *4th sub-division* of *section* 670, *Civil Code;* and the exception to his evidence should have been sustained. The only other witness who attempts to prove notice is the principal obligor in the debt, and he himself admits that he does not recollect whether it was before or after the note was executed that his father informed Kaye that he had no interest in the negroes—though he *thought* it was before. Certainly such proof as this ought not to prevail to fasten notice upon a creditor of an adverse claim to property held by his debtor for over thirty years, and which, under the law, had vested in the latter absolutely after five years possession.

It seems to us, therefore, that the court below erred in dismissing and overruling appellant's motion, and the judgment is therefore reversed, and cause remanded for a new trial conforming to this opinion.