## CATTERLIN v. HARDY, ET AL.

1. When a defendant, by his answer, insists that a deed set out by the complainants, was not recorded or proved, as prescribed by the law of the State where executed, without showing that for these reasons it was invalid there, no consequence flows from his assertion.

2. A deed, by which a life estate is conveyed to one and his wife, with remainder to their children, lawfully begotten, is not an incambrance on the property necessary to be recorded in this State, when the property is removed here.

3. A defendant, who claims under a sheriff sale, cannot set up against a third party claiming an estate in remainder, consequent on the determination of the life estate of the defendant in execution, that the third party witnessed and assented to a deed of the defendant in execution, conveying all his interest to one of the plaintiffs in execution. Not claiming under the deed, nor invested with any right under it, he is not in a condition to set it up.

4. By the common law, as recognized in this State, a remainder may be created in a slave, by deed, to take effect after the determination of a life estate.

5. A loan to H. and his wife for the term of their natural lives, of slaves, and after their decease to their children lawfully begotten, is good as a conveyance of the remainder to the children.

Writ of Error to the Court of Chancery for the 2d District.

THIS bill is filed by Wm. A. Hardy and others, as children

of Robert Hardy, sen., against Catterlin. The case made by it is this, viz :

In February, 1831, in the state of North-Carolina, John Hardy, the father of Robert Hardy, sen., executed a deed of gift for certain slaves, among which was a woman named Jenny, conveying the said slaves as a loan " to Robert Hardy and his wife Olive, during their natural life-time, and after their decease to their children lawfully begotten between them."

This slave Jenny has issue Bene and Ellick, which with other slaves, were removed to Washington county, in this State, in 1834, and they were then levied on in 1844, as the property of Robert Hardy, and sold by virtue of certain executions against him. The defendant Catterlin was the purchaser at the sheriff's sale, having notice of the deed of gift aforesaid.

The bill charges, the complainants have good reason to believe, and do believe, it is the intention of Catterlin to remove the slaves out of the State of Alabama, or so dispose of them that they will not be forthcoming at the death of Robert Hardy and his wife. The prayer of the bill is, that Catterlin may be restrained from removing the slaves out of the State, and required to give security that the same may be forthcoming when the interest of the complainants will vest.

Catterlin answered the bill, admitting the execution of the deed of gift exhibited, but insisting it was not on consideration valuable in law, and that it was not proved and recorded within the time and in the manner prescribed by the law of North-Carolina. Also. that it never had been recorded in any county of this State.

He also admits the purchase of the two slaves under the sheriff sale, and had notice of the existence of the deed, but does not admit its legal validity. He also insists that other slaves given by the same, and another of subsequent date, with the same limitation to the children, were sold at the same time, and purchased by one of the complainants. He also insists that Robert Hardy and Olive his wife, executed a deed

of trust, conveying the slaves purchased by the defendant, with others, to Virginius Marler, to secure the payment of a judgment in his favor. That one Owen Van Vichler, one of the plaintiffs in execution, under which the said property was sold, paid up the sum due on this deed amounting to $852, no part of which has yet been repaid to him—the sheriff crediting the executions with the proceeds of the sale. All the complainants assented to this deed, and two of them are witnesses to it. The defendant therefore insists that it should be satisfied out of the slaves conveyed by it, and that a contribution should be made by the purchasers of all the slaves. He denies that he is about to remove the slaves, or dispose of them as charged in the bill.

The answer concludes with a demurrer to the bill, on the ground that it contains no equity.

By consent of parties, the cause was submitted on the bill, answers and exhibits. The chancellor considered the equity of the bill, as admitted by the answer, and that none of the matters set up, were sufficient to avoid it. He accordingly decreed the defendant should give security as prayed by the bill.

The decree is assigned as error.

Peck, for the plaintiff in error, insisted,

1. As no statutes of North-Carolina, bearing on the deed, are produced, it must stand as at common law, and by that the first taker has the absolute estate. [2 Kent's Com. 351, and cases there cited.]

2. If the court will notice the statutes of North-Carolina, then the deeds are void, not having been recorded in the manner prescribed. [1 Rev. Code N. C. 230, § 17, 18.] The cause was heard by consent on the answer, and the assertion there is, the deed was not recorded according to law.

3. The only ground for equitable interposition being denied, the bill should be dismissed. [2 Story's Eq. § 845; 2 Paige, 132; 2 Kent's Com. 354; Lewis v. Hudson, 6 Ala. Rep. 466.]

B. F. Porter, contra.

65

GOLDTHWAITE, J.—1. This cause was heard by con-
sent on the bill, answers and exhibits, and this consent, un-
der the 11th rule of chancery practice, dispenses with the ne-
cessity for proof of the answer, even when it asserts new mat-
ter ; but in the present case, no consequence flows from the
defendant's assertion that the deed was not recorded in the
manner prescribed by the laws of North-Carolina. We can
not intend that the omission to record the deed had the effect
to enlarge the apparent life estate of the first donee into a
fee. If the question was here between a creditor of the do-
nor and the donee, it might be important to inquire if the
deed was properly recorded ; but here both parties, in effect,
claim under the deed, and we must presume, in the absence
of specific allegation, that it is valid.

2. Nor is the deed of that character as to require registra-
tion under our statutes, in consequence of the removal of the
property to this State. The remainder, if one exists in the
children of the first donee, is not an incumbrance upon his ti-
tle, and the deed by which the remainder is shown, is a mu-
niment, showing not merely the extent and value of Hardy's
title, but also of that of his children. [Swift v. Fitzhugh, 9
Porter, 39.]

3. The mere fact that two of the complainants witnessed
the deed by which Hardy and wife created a security on these
slaves, although assented to by the other complainants, is not
stated as a fraudulent representation, that the grantors were
invested with the whole title to the slaves, nor do they at-
tempt to convey more than their right and title, whatever it
was. They had the right to encumber their life estate, and
unless a greater right was pretended, we do not see why any
presumption of fraud should arise. [Inge v. Murphy, Janu-
ary term, 1846.] But however this may be, the question is
one in which the defendant has no interest, as he claims un-
der the execution, and not through the deed of trust. Not
being invested with any right under the deed of trust, he is not
in a condition to set it up.

4. If we had to decide this case on the common law, as
recognized in North-Carolina, the question arising on the deed
would not be without difficulty, but the defendant does not
assert in his answer that the entire estate vested in Hardy

Catterlin v. Hardy, et al.

and wife, at the execution of the deed by the laws of North-Carolina, nor can we judicially take notice of what these are, or how far the common law, as recognized there, differs from our own local decisions. [Inge v. Murphy, January term, 1846.] We must therefore pronounce on this deed as if executed here.

In Price v. Price, 5 Ala. Rep. 578, it was held by this court, a remainder could, by the common law, be created by deed, and applied the rule to a conveyance of slaves.

5. It is urged, however, that here the remainder is to the same persons as would take as heirs, and therefore the first taker is within the rule of Shelly's case. It may well be doubted if this rule has any relation to personal chattels,—[Fearne on Rem. 490; Knight v. Ellis, 2 Bro. Ch. 570,] except as a mode by which to ascertain the intention of the testator, grantor, or donor. When the term children, is used with reference to personal estates, it is generally considered as indicating the intention that they shall take as purchasers. ]Knight v. Ellis, *supra*.] And even in a devise of lands to one and his children, it is construed as a term of purchase, if there be children living at the date of the devise. Wild's case, 6 Coke, 17 ; 2 Powell on Devises, 494.] In this case, however, there is no need for construction, as the intention of the donor is clearly expressed, that the first takers shall have only a life interest, and that the remainder after their death shall go to the children lawfully begotten, &c. We are clear then the children take a vested remainder under this deed, considering it by the rules of the common law as prevailing here. And we presume there is but little question the deed would receive the same construction in North-Carolina, under their statute of 1823, (Laws of N. C. ch. 1211,) even if it would not withhout that aid.

6. It is supposed however, as the defendant denies the intention to remove the property out of the State, and also denies the intention so to dispose of it that it shall not be forthcoming, the bill should be dismissed. We entertain the opposite opinion, however, and think, whenever the tenant for life has parted with the estate, or it has been taken from him by operation of law, the remainder man is entitled of course, to call for security. This seems to be the consequence of

what is said in Lewis v. Hudson, 6 Ala. Rep. 463, as there the chief reason for allowing the security was, that the property was about to be sold. Although the rule is, that the holder of the first estate will, in general, only be required to exhibit an inventory, (1 Story, 562,) yet we apprehend this is a privilege accorded to him, because he is invested with the right by the donor, and the use will not be vexatiously meddled with. But when he ceases to exercise control over the property by his right passing to another, there is no reason not to require that other to secure the remainder-man, so that the chattel shall come to his possession when the life estate determines. [Slanning v. Styles, 3 P. Wms. 336.]

On the whole, we can see no error in the decree. Decree affirmed.