## SMITH v. RUDDLE et al.

1. A deed made in Georgia, by which in contemplation of marriage, slaves are conveyed to trustees, in trust for the separate use of the wife, is not such an instrument, as is by law required to be recorded, on the removal of the property to this State.

2. Slaves being conveyed to trustees, for the separate use of the wife, with remainder to her children, they permitted the husband to have the possesion of the slaves, which he retained for more than three years, and then sold them. Held, that the statute of frauds, had no applcation, and that the fact, that the husband had been in possession three years before his sale, did not affect the title of those in remainder.

Error to the Circuit Court of Montgomery. Before the Hon. J. D. Phelan.

This was an action of trover, to recover the value of a negro girl, brought by the defendants in error against the plaintiff. On the trial a bill of exceptions was taken to the ruling of the court, which shows, that the plaintiff in the court below, to show the title to the slave in controversy, introduced a deed in evidence, bearing date October, 1836, made and executed in Richmond county, State of Georgia, by Elizabeth H. Greenwood, and George Ruddle, which recites, that a ma.riage was about to be solemnized, between the said Elizabeth H. Greenwood, and George Ruddle, and

that the said Elizabeth was entitled to a legacy under her father's will; that by the 5th clause of the will, it was required, that a marriage settlement should be made, conveying the property to which the said Elizabeth H. should be entitled, to trustees, for the use of said Elizabeth and her children, and in consideration thereof, and to carry into effect the will of the testator, the said Elizabeth H., with the consent of the said George Ruddle, which is evidenced by his signing said deed as a party, thereby conveyed, bargained, and sold unto Robert I. Greenwood, and George Schley, all her interest in the said estate, and after the division of the estate, the said Robett I. Greenwood, and George Schley, were to take the legal title, and hold the same in trust, and to receive the rents, issues, and profits of said property, during the joint lives of the said Elizabeth H. and Geo. Ruddle, and to pay the same to the said Elizabeth H., notwithstanding her coverture, for her sole and separate use, during the joint lives of the said George, and his intended wife Elizabeth H, but so that the said Elizabeth shall not have power to mortgage, or sell the same, or otherwise dispose of the property by way of anticipation; and at the death of the said Elizabeth H., the property, both real and personal, was to go to, and be equally divided between such children, as she may have, living at her death. This deed was acknowledged and recorded in the county of Richmond, in the State of Georgia. The negro sued for, is a part of the estate allotted to the said Elizabeth, and was conveyed by said deed. It was also shown, that George Ruddle, the husband, after the marriage, received the slave from the trustees, in the year 1837; and in the year 1839 removed to Montgomery county, Ala. and continued in possession, controlling said slave as his own, until March, 1843, when he sold her to the plaintiff in error, who had no notice of said deed, nor was there any instrument in writing between George Ruddle and the trustees, showing the terms upon which he received said slave from the trustees. The plaintiff's title accrued by the death of their mother, Mrs. Elizabeth H. Ruddle, who died in September 1843.

The court charged the jury, that the statute of frauds, relating to three years possession did not apply to this case—a

verdict and judgment was rendered in favor of plaintiffs below, and this charge of the court is here assigned as error.

Elmore & Yancey, for plaintiff in error.

1. The deed does not provide for the possession of the husband or wife, but excludes it. The trustees are to hold the property and pay the profits to the wife. They can also sell at their discretion.

2. Ruddle's possession is not under the deed, but is inconsistent with it, and he holds under no instrument showing the nature of his possession, but controls the property and exercises dominion over it in this state more than three years, and sells a negro to Smith, who has no notice of the deed—and no other notice of the condition of the property than what the law annexes to the possession, with claim of property. A case precisely within the terms and the mischief the statute. Clay's Dig. 255, § 2, last clause of section.

3. Nor can the husband's possession be referred to the wife's interest, for she had none in the *corpus*, but in the profits. Her possession would be illegal, because contrary to the deed, and his possession cannot be referred to an invalid one of the wife, so as to defeat the statute.

4. The possession was in the husband, and as the wife was not entitled to it, the law will now presume his possession to be her's, as it would, if she was entitled to the possession, or if she had an interest in the *corpus*.

5. If the negro belonged absolutely to the trustees, it would not admit of a question, and it is the same thing when the title and possession belong to them.

If contrary to the trust, they permit Ruddle to get hold of the property, and so to act as to perpetrate a fraud on an innocent purchaser—they must suffer and be held responsible to the children.

The deed is not impeached, but the possession of Ruddle, under the statute for three years, by his sale vested the property in Smith, and on his possession we rely—not on any thing in the deed as contrary to law, or as not probated and recorded.

J. W. Pryor, contra.

The plaintiffs are purchasers for valuable consideration.

The children of the parties are within the consideration of the marriage. Fraudulent Conveyances, 110, 123.

If any conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent within this act, unless the same be by will, duly proved and recorded, or by deed in writing, acknowledged or proved. Clay's Dig. 255, § 2. Now the case does not come within this part of the statute, for the "conveyance" was founded on a "valuable consideration."

But this court has decided that a marriage contract does not come within the purview of our registry statutes. Swift v. Fitzhugh, 9 Porter, 39.

The contract was valid—was founded on a valid consideration—did not require to be registered. Now the mother of the plaintiffs was entitled to the possession of the negroes, and the possession of her husband will be referred to her title under the marriage contract. The possession is with the party who has the use of the property. 1 Hill's S. C. 16, 21. But section 3, 225, is conclusive in this matter. Doubtless the word "good," in this section, should be construed to mean "valuable."

The deed is silent about the possession. It vests the legal title in trustees, and rents, issues, &c. in wife for life, and then to the children. The children are purchasers for valuable consideration—are infants—and took a vested estate. Their title therefore could not be defeated, unless the trustees had sold the property, &c.

DARGAN, J.—It is not denied, but that the children, after the death of the mother, became entitled to the property by the terms of the deed. But it is contended, that as George Ruddle had the possession of the slave, three years before he sold her to the plaintiff in error, and the terms on which he received said slave from the trustees not being reduced to writing and recorded, and the deed of 1836 not being recorded in Alabama, the title of the plaintiff in error, who was a *bona fide* purchaser, is perfect under the statute of frauds of this State.

That portion of the act relied on, is in the following language: "And in like manner, when any loan of goods and

chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained by the space of three years, without demand made, and pursued by due course of law on the part of the pretended lender, or where any limitation, or reservation shall be pretended to have been made, of a use, or property, by way of condition, reversion, remainder, or otherwise, in goods, and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken, as to the creditors and purchasers of the person aforesaid so remaining in possession, to be fraudulent within this act, and that the absolute property is with the possession, unless such loan, reservation, or limitation of use, or property, were declared by will, or deed in writing, proved, and recorded as aforesaid."

That the omission to have the deed of 1836 recorded, does not affect the title of the defendants in error, is fully shown by the case of Swift v. Fitzhugh, 9 Porter, 39, for the instrument is not within either the spirit, or intention of the terms, "deed of trust, mortgage, or other legal incumbrance," as used in the act of 1824. The instruments designed by this act to be recorded, are such as create an incumbrance, or charge upon the property, for the payment or security of a debt, or demand, which do not absolutely convey away the title to the property, but only incumbers it with the payment of the debt; and it is manifest that this deed is not of that description. The only question then, is, did the sale of George Ruddle, connected with his previous possession, for more than three years, give the plaintiff in error title, as against the defendant in error? We think the object and design of the clause of the act of 1803, relied on by the plaintiff in error, was to subject the title of the pretended lender to the payment of the debts of him, to whom the loan was made, and with whom possession shall have remained, for the space of three years; or if the person so retaining the possession should sell to a *bona fide* purchaser, then to defeat the title of the lender altogether. But we are clearly of opinion, that it was not the design, or intention of the act, to defeat a title outstanding in another, over which the pretended lender had no authority, or control. Suppose, for

the sake of illustration, that the lender had a life estate in the chattel, and he loaned it to another for an indefinite period of time, and possession remained with him for three years, the terms of the loan not being reduced to writing, and recorded. In such a case, by the words of the statute, the absolute property shall be considered, with the possession, in favor of creditors, and purchasers. But it is manifest that the term *absolute property*, means only such property as the lender had in the chattel. For if instead of *lending*, the tenant for life had made an absolute sale to the party, purporting to convey the absolute right to the chattel, and possession had remained three years under this sale, and then the purchaser had sold *bona fide* to another, it could not be maintained, that this statute was intended to defeat, or would defeat the title of the remainder man, who became entitled to possession, after the death of him who had a life estate in the chattel.

This view, we think, fully shows, that the whole scope and design of the clause of the act relied on, was to subject the title of the lender, to the claims of the creditors and purchasers of him to whom the loan was made, or to the creditors and purchasers of those claiming under him.

Tested by this rule, the title of the defendants in error has not been defeated by the sale of George Ruddle. The trustees, Greenwood and Schley, had only the legal title vested in them, during the life of Mrs. Ruddle. The plaintiff below, on her death, became entitled to the property, and *this title* could not be defeated by any act of the trustees, contrary to the terms of the deed ; and whatever effect the statute may have on the title of the trustees, (if it can affect a mere naked legal title,) it has no effect whatever on the title of the defendants in error, under the circumstances disclosed in the record. Let the judgment be affirmed.