## LYDE ET ALS. vs. TAYLOR ET ALS.

1. Where a party in a chancery suit proceeds to examine a witness, whom he knows to be interested, the deposition cannot be excluded at his instance on the sole ground of the incompetency of the witness.

2. A *bona fide* purchaser from one who has but a life estate in a chattel acquires no greater interest than his vendor had.

3. Where a deed of gift of slaves, with reservation of a remainder, is executed in another State, and the slaves are brought into this, a record of the deed is not necessary to protect the remainder. The second section of the statute of frauds applies only to deeds made and executed in this State.

4. When a tenant for life has conveyed the slaves absolutely to different persons, who claim the entire title and deny that of the remainder-men, a court of equity will interpose and secure to them the future enjoyment of their rights.

Error to the Chancery Court of Montgomery. Tried before the Hon. Anderson Crenshaw.

Lyde et als. v. Taylor et als.

THE object of this bill, which was filed by the plaintiffs against the defendants in error, was to obtain security for the forthcoming of certain slaves in the possession of the defendants, in which the plaintiffs claim the remainder after the death of their mother, Mary Jane Lyde, by virtue of two deeds of gift executed by their grandfather, Alex'r Lamb. The defendants, who, the bill alleges, claim the absolute title to the slaves and deny the rights of the plaintiffs, rely on a title acquired from John J. Lyde, the husband of Mary Jane, and insist that they claim the entire title, that they are *bona fide* purchasers without notice, and that they are protected by the second section of the statute of frauds. Mary Jane Lyde, who was a security on the injunction bond executed by the plaintiffs, was examined at the instance of the defendants, and upon the hearing the plaintiffs offered to read her testimony, but the chancellor upon the objection of the defendants excluded it on the ground of her incompetency. The chancellor dismissed the bill, and the plaintiffs appealed from his decree.

MARTIN & BELSER, for plaintiffs in error:

1. The deed to John J. Lyde, trustee, created a vested remainder in the slaves to the children of Mrs. Lyde.—2 Black. Com. 169, 171; 4 Kent's Com. 202 to 206; Fearne on Rem. 216; Dunn v. Davis, 12 Ala. 135 ; Price v. Talley, 10 Ala. 946; Woodley v. Findley, 9 ib. 720 ; Kinget v. Leak, 2 Dev. & Batt. 135. As remainder-men, their rights could not be defeated by the act. of the tenant for life.—4 Kent's Com. 202-5, 235, 269; Fearne on Rem. 216 ; Woodley v. Findley, 9 Ala. 720 ; Price v. Talley, 10 ib. 946 ; Kinget v. Leak, 2 Dev. & Batt. 135 ; Cole v. Robertson, 1 Ired. 544 ; Lewis v. Mobley, 4 Dev. & Batt. 233.

2. The circumstances are sufficient to authorise the complainants to require the security to be given by the purchasers for the property. Where there is a reasonable ground for apprehension on the part of the remainder-man, the court will order the tenant for life to give security for the property.—Lewis et al. v. Hudson, 6 Ala. 467; Lamb v. Wragg & Stewart, 8 Porter, 83 ; Latimer v. Elgin, 4 Dess. Ch. 28-9-30 ; Covenhoven v. Huler, 2 Paige, 132; James v. Scott, 9 Ala. 579.

3. The chancellor erred in rejecting the testimony of Mrs. Lyde. At law it has been ruled that the opposite party may use

the deposition when he has been cited to attend the taking and has cross-examined, and the rules of evidence are the same in law and equity.—Stewart et al. v. Hood et al., 10 Ala. 607; Yeaton v. Fry, 3 Cranch, 335; Rogers v. Barnett, 4 Bibb, 480; Ansley v. Wood, 1 Hop. Ch. 230; Ritchie v. Lyne, 1 Call 491; Morrison v. Hart, 2 Bibb, 28; Webster v. Lee, 5 Mass. 334; Reed v. Clarke, 4 Monroe, 137; Benson v. Leroy, 1 Paige, 122.

4. Neither those who purchased or who claim the property through Mr. or Mrs. Lyde can be considered innocent purchasers for a valuable consideration without notice, and therefore the chancellor erred in deciding otherwise.—Smoot v. Fitz, 9 Porter, 72; Frow v. Ferguson, 11 Ala. 880; Walker et al. v. Miller & Co., ib. 1081-2-3; Dick v. Tillinghast, 4 Paige, 215; Rowan v. Adams, 1 Smede & Mar. ch. 45; Harris v. Carter, 3 Stew. 238. Purchasers at sheriff's sale are affected with all the equities which bind the person whose interest they buy, and are not within the rule which protects a purchaser without notice.—Dred v. Hill, 1 Dev. & Batt. Eq. 436; Ullier v. Lythe, 6 Ohio, 482; Smith v. Paynter, 5 Serg. & Rawle, 225; Knight v. Jordan, 6 Hum. 102.

5. The deeds being executed in South Carolina and the property delivered there also to the trustee, the legislative acts of this State do not in any manner influence the gift so as to destroy the remainder.—Catterlin v. Hardy, 10 Ala. 511; Adams v. Broughton, 13 ib. 731; Thomas v. Howard, 6 ib. 121; Felder v. Harper, 12 ib. 612.

THOS. WILLIAMS, Jr., for the defendants.

DARGAN, C. J.—The first question to which our attention is directed is whether the complainants are entitled to read as evidence the deposition of Mary Jane Lyde. She was examined at the instance of the defendants and cross-examined by the complainants. At the hearing of the cause the defendants objected to the reading of her deposition on the ground of interest, she being security on the injunction bond. The defendants knew or were bound to know that she was a security on the bond before they examined her, and the question is, can a party to a suit in equity examine a witness he knows to be interested, and after he has been examined object at the hearing to the com-

petency of his testimony on the ground of interest alone? The general rule on the subject is, that objections to the competency of a witness must be made as soon as his interest is discovered, and if the party go on to examine the witness, knowing that he is interested, the objection is waived, for he cannot be permitted to ascertain by an examination of the witness, first what he will depose to, and then reject it if he dislikes the testimony.—1 Greenl. Ev. §§ 420-1. In the case of Stewart v. Hood, 10 Ala. 600, a witness was examined by the defendants and cross-examined by the plaintiff. On the trial the plaintiff offered to read the deposition, and the defendant objected to it on the ground that the witness was interested. Judge Goldthwaite, in delivering the opinion, said: "If the witness was examined in open court, it is very certain we should never hear the objection of interest from the party offering him, and certainly there is no good to result from a practice that will permit a party first to ascertain by an actual examination what a witness will swear to, and then admit or exclude him at pleasure." This is the rule of practice that prevails at law, but we see no reason why a different rule should prevail in equity. A party should not be permitted to speculate on the testimony of an interested witness, any more in equity than at law; but in both courts, if he goes on to examine an interested witness, with a knowledge of his interest, he should not be permitted to object to it on that ground, springing the objection for the first time at the final hearing.

2. Alexander Lamb, the father of Mrs. Mary Jane Lyde, executed two deeds, one bearing date the 10th of January 1826, the other the 17th of March 1832—each deed embracing different slaves. By both deeds he conveyed the slaves named in them to John J. Lyde, the husband, in trust for Mary Jane during her natural life, and after her death to the children of Mary Jane and John J. Lyde, who should be living at the death of their mother. By neither deed was a separate estate created in favor of Mrs. Lyde, but John J. Lyde, the husband, became entitled to them during the life of his wife, and the children of the marriage, who survive their mother, take them after her death. This is the construction heretofore placed on these same deeds by this court, in Wragg and Stewart v. Lamb, 8 Porter, 73. The defendants however contend that they are purchasers from John J. Lyde for a valuable consideration without notice, and should

therefore be protected in a court of equity against the claim of the plaintiffs. It is not necessary to enter into an examination of the question, have the defendants acquired title?—for if we suppose that they are *bona fide* purchasers from John J. Lyde, or from his representative, and that they paid a full price, without notice of the title of complainants, yet they have acquired by their purchase only such title as their vendor had; for the vendor of a chattel, although in actual possession, can convey only ·such title as he has, and cannot by his sale divest the title of another, who neither assents to nor recognizes his act.—Williams v. Marle, 11 Wend. 80; Everett v. Coffin, 6 Wend. 609; Wheelwright v. Depeyster, 1 Johns. 470. It is true that if the entire title at the time of the sale was vested in the vendor, although he had obtained it under such circumstances that the original owner could annul the contract and reclaim the goods, yet if the party who has obtained the title sells them to another *bona fide* and for a valuable consideration, before proceedings have been taken by the original owner to divest the title and recover possession, the purchaser acquires a title which the original owner cannot defeat, either at law or in equity.—Story on Sales, §§ 200-1, and cases there cited. But it must be observed that in those cases the entire title to the chattel at the time of the sale was in the vendor and it passed to the vendee, and in the hands of a purchaser who bought *bona fide*, the title is purged of the fraud; and his equity being equal to the equity of the original owner and connected with the legal title, there is no reason why the original owner should be permitted to recover against such a purchaser. But when the vendor has no title at all, or but a limited or partial title, as for life or other less estate, he imparts to his vendee only such title as he had at the time of the sale. Assuming then that the defendants are *bona fide* purchasers from John J. Lyde, they acquired only such title as he had at the time of the sale, which was a title during the life of his wife, Mary Jane Lyde.

3. It is however contended that if the defendants are *bona fide* purchasers, they are protected by the second section of the statute of frauds, as the deed has not been recorded in the manner prescribed by that act. The clause relied on is in the following language: "In like manner, where any loan of goods or chattels shall be pretended to have been made to any person

with whom or those claiming under him possession shall have remained for the space of three years without demand made and pursued by due course of law on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of a use or property by way of condition, reversion, remainder, or otherwise, in goods or chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid so remaining in possession to be fraudulent within this act, and that the absolute property is with the possession, unless such loan, reservation or limitation of use or property is declared by will or deed in writing proved and recorded as aforesaid." In the case of Felder v. Harper, 12 Ala. 612, it was said by this court, that a reservation in a deed of gift of a remainder in a slave to a third person, after the determination of a life estate, is within this statute, and therefore void as against the creditors of and purchasers from the tenant for life, after the lapse of three years, unless the deed be recorded as the statute directs. We do not deem it necessary to give this decision a critical examination, for the deed under which the complainants derive their title was executed in the State of South Carolina; and in the case of Adams v. Broughton, 13 Ala. 731, this court held, after a deliberate examination of the question, that this statute was only intended to operate on deeds made and executed in this State, and did not apply to or comprehend deeds executed in another State. So also in the case of Catterlin v. Hardy, 10 Ala. 511, it was held that where a deed of gift was executed in North Carolina, by which a life estate was conveyed in the slaves to one and his wife, and after their death the remainder to the children of the marriage, that it was not necessary on the removal of the slaves to this State to have the deed recorded in order to protect the title of the children to the remainder against the creditors of their father. Under the influence of these decisions, which we must consider as settling the question, we must hold that the statute relied on can have no influence on the deed or on the title of the plaintiffs.

4. The complainants are remainder-men, and entitled to come into a court of equity and require security of the defendants that the slaves be forthcoming at the death of their mother, if they show there is danger of loss or injury to their interest without

such security.—2 Story's Eq. 142-3 ; Lewis v. Hudson, 6 Ala.
463 : James v. Scott, 9 Ala. 579.   The fact that the slaves
have been conveyed absolutely to different individuals, who as-
sert absolute title to them and deny the right of the complain-
ants, constitutes a sufficient ground to warrant the interpositon
of the court in favor of the complainants, and to make such or-
der and decree as will secure to them the future enjoyment of
their rights.

The decree dismissing the bill must therefore be reversed
and the cause remanded, that further proceedings may be had
in conformity with the law as here expressed.