Turner .v. Fenner et als.

~~~~~~~~~~

## TURNER vs. FENNER et als.

1. The statute of frauds of this State does not apply to property brought into the State by a tenant for life holding under a deed or will executed beyond the State, although the tenant for life and the remainder men resided in this State, at the time of the execution of the deed, or probate of the will, and continue to reside here.

2. The law of the owner's domicil must in all cases determine the validity of every transfer or other disposition of personal property by the owner, whether it be *inter vivos* or *post mortem*, unless there is some positive or customary law of the country where it is situate providing for special cases, or from the nature of the particular property it has a necessarily implied locality.

ERROR to the Circuit Court of Lawrence. Tried before the Hon. Thomas A. Walker.

THIS was an action of detinue for the recovery of two slaves, instituted against Turner, in October, 1847, by Joseph F. Fen-

her, Thomas B. Fenner, Julius Johnson and Mary, his wife, formerly Mary Fenner, and Thomas B. Fenner, who sues as next friend for Richard H., Margaret E., Ann M. and Lucy M. Fenner, minors under the age of twenty-one. The plaintiffs claimed under the will of John Howson, which they proved had been duly executed and admitted to probate in Halifax county, North Carolina, where the testator died. This will created a life estate in the property in controversy in Robert Fenner, with remainder to his children, who are the plaintiffs. It was admitted to probate in North Carolina in November, 1842. A division of the testator's estate was had in February, 1843, and in the month of April following, the negroes were brought to this State by Robert Fenner. The defendant claimed under a purchase at a sheriff's sale on the 12th March, 1846, under an execution against Robert Fenner. He also proved that said Robert Fenner and his children resided in Lawrence County, Alabama, prior to 1842, and continued to reside there until 1847, and that said will had never been recorded in this State. The court charged the jury that it was not necessary that the will should be recorded in this State, under the statute of frauds, to protect the remainder from the creditors and purchasers of Robert Fenner, to which charge the defendant excepted.

R. W. WALKER and JOHN A. ELMORE, for plaintiffs in error :

1. The second section of our statute of frauds is not confined in its operation to any one or more classes of cases, but embraces every conceivable one, where the possession is with one person, either with or without an interest, and an estate, use or property, either present or future, is in another.—Clay's Dig. 254, § 2 ; Myers v. Peek's Adm'r., 2 Ala. 648 ; Bank v. Croft, 6 ib. 622 ; Johnston v. Bank, 7 ib. 379 ; Tatum v. Manning, 9 ib. 144 ; Cook v. Kennedy, 12 ib. 42 ; Felder v. Harper, ib. 612 ; Gressett v. Agee & Dumas, 14 ib. 354 ; Craig v. Payne, 4 Bibb, 337 ; Davidson, Ex'r. v. Nunnally, 3 B. Monroe, 534 ; Davidson v. Prewitt, 9 ib. 103.

This court, in construing the statute, has decided that instruments executed or interests created in another State, are not within its provisions, but the precise question here presented under the last clause of the statute has never been decided unless in one case.—Catterlin v. Hardy, 10 Ala. 514 ; Cook v.

Kennedy, 12 ib. 42; Adams v. Broughton, 13 ib. 747; Thomas
et al. v. Davis, 6 ib. 121; Smith v. Ruddle, 15 ib. 28; Lyde
et al. v. Taylor, 17 ib. 270.

Such a decision we insist cannot be sustained on principle or
authority, and the question cannot be considered a settled one.
The second section of the statute of frauds does not affect the
validity of the contract or instrument, whether made here or
elsewhere; that is not the subject of legislation. The law does
not regard the mode, or manner, or place in which the transac-
tion takes place, but its provisions apply to the possession in
this State. The moment this possession begins here, the law
begins its operation on the possession, and declares that the pos-
session here carries with it all the incidents of property, and for
that reason makes it the property of the holder as regards third
persons. It is not a mere registry act, but a rule of property.
—2 Ala. 648. It regulates the effect of the possession in this
State, and this without reference to the place where the right to
it was acquired or created, or where it was originally taken. It
is a general principle, in fact, that the effect of the possession of
personal property is regulated and determined by the laws of the
State where such possession is held.

These views are fully sustained by the following cases decided
on statutes identical with ours.—Beasley v. Owen, 3 H. &
Munf. 456; Withers v. Smith, 4 Bibb 170; Boyd v. Stanback,
5 Munf. 305; Pate v. Barker, 7 Leigh 88; Collins v. Loftus,
10 ib. 5; McKissick v. McKissick, 6 Humph. 75; Ferguson v.
White, 1 A. K. Mars. 7; Baylor v. Smither, 1 Littell 112;
Davidson v. Nunnally, 3 B. Mon. 534; Fightmaster v. Beas-
ley, 7 J. J. Marsh. 410; Blair v. Dade, 9 B. Mon. 61; Dav-
enport v. Prewitt, 9 ib. 103; Mosely v. Williams, 3 How. Miss.
520; Lewis v. Gilmer, 3 Sm. & Mar. 560.

There may be difficulties in complying with the letter of the
statute as to the time and place of registration, but the statute
is to be liberally, not literally construed. Mere inconvenience
cannot abrogate its provisions. It has been asked, how can the
law be complied with, when the instrument has been made more
than twelve months, or more than three years before the remo-
val of the property to this State?

It is a sufficient answer to say that these are not the facts of
this case. The removal here took place shortly after the bill was

made, and when such a case as the one supposed arises, it will be time enough to decide it.

But undoubtedly the correct construction of the statute is, that proof and registration, as required by its provisions, at any time within three years after the possession begun in this State, would be a compliance. This has been expressly decided in other States on statutes of which ours is a transcript, *verbatim et literatim.*—Beasley v. Owen, 3 H. & Munf. 456 ; Ferguson v. White, 1 A. K. Mars. 7 ; Baylor v. Smither, 1 Littell, 112 ; Withers v. Smith, 4 Bibb 170 ; Pate v. Barker, 7 Leigh 88 ; Boyd v. Stanback, 5 Munf. 305 ; Lewis v. Gilmer, 3 Sm. & Mar. 560 ; Mosely v. Williams, 3 How. Miss. 520 ; Collins v. Loftus, 10 Leigh 5.

The argument *ab inconvenienti* applies with more force to a mortgage executed in Georgia by a citizen of that State on personal property in this, than to the present case. But such a mortgage, it has been held, is embraced by the act of 1823. Compare the two statutes.—Clay's Dig. 255, § 5 ; ib. 255 § 2 ; Dearing v. Lightfoot, 16 Ala. 28 ; Beall v. Williamson.

2. But conceding the law to be as determined in Adams v. Broughton, and Lyde, *et al.* v. Taylor, and yet this case is not governed by it. Those cases simply decide that the statute does not apply to an instrument executed in another State between parties there resident, affecting property there situate, and not in contemplation of the removal either of the parties or the property to Alabama.

The laws of a State must regulate all rights and estates which, in their inception, it is contemplated and intended shall be possessed and enjoyed by its citizens, and within its jurisdiction. Estates and interests so created must be considered as made with a direct reference to the laws of the State in which they are intended to operate and have effect.—LeBreton v. Nouchet, 3 Martin, 60 ; Kneeland v. Easley, Meigs 620 ; Blanchard v. Russell, 13 Mass. 1 ; Hale v. N. J. Co., 15 Conn. 539 ; Carroll v. Remich, 7 Sm. & Mar. 798 ; Story Conff. Laws, §§ 180-1-2, 194, 328.

If, at the time this will was executed, the slaves in controversy had been in this State, there can be no doubt, on principle and authority, that this remainder would have been subject to the influence of the statute.—Dearing v. Lightfoot, 16 Ala. 28 ;

Varnum v. Camp, 1 Green N, J. 326; Story Confl. §§ 383, 390, 398, 410.

There can be no difference in legal effect between the actual presence of the property here, when the instrument is executed, and the intention of the maker that it shall be brought and held here subject to the instrument.

The present case comes within this principle. The bequest of the life-estate in these slaves was designed to take effect and be enjoyed in Alabama. It is of the essence of a gift that it shall be enjoyed by the donee somewhere. Here is a gift of a life estate in slaves, to Robert Fenner, and it was of necessity in the contemplation of the testator that it was to be possessed by him somewhere. Where? When the will was made, long before and long after Robert Fenner resided in Lawrence County, Alabama. He is described in the will as "Robert Fenner, of Alabama." The testator thus knew his place of residence; and the will was made with direct reference to it. Was it the testator's intention that the bequest was to be enjoyed in North Carolina or in Alabama? It is a universal maxim of law that "chattels follow the domicil of the owner," and the civilians say that the reason of it is, that "as movables have no such fixed and perpetual *situs* as lands have, it is necessary that their *situs* should depend on the pleasure of the owner, and that they have the very *situs* which he wishes when they have that of his own domicil."—Story Confl. Laws, §§ 377-8, 325, (d) 325, (k) 405, 362. Hence it is a natural, sensible and legal presumption, that when a man is made the owner of personal property, it is the intention of the party who makes him the owner, that he shall hold the property in the place of his domicil, and subject, therefore, to the laws there prevailing. The donor of personalty must always be presumed to intend that the donee shall hold it in the place where he lives. Not only the life estate in the slaves was given to a citizen of Alabama, but the remainder also. This strengthens the presumption that the testator intended that the bequest was to be possessed and enjoyed here.

Now here is a bequest to a citizen of this State intended to be enjoyed by him here, and held here, subject to a limitation in favor of third persons, also citizens of Alabama, which would not be valid without registration, against creditors and purchasers, if the will making such bequest had been executed in this

:State. If such a case is not within the provisions of the stat-
.ute, then they are worse than nugatory. If the statute does
.not apply to such a case, then by this law citizens of other States
:are made a privileged class to commit frauds upon our own
citizens.

NICOLSON, *contra,* contended that if the will was properly
probated in North Carolina, it is valid to pass personal proper-
.ty wherever situated.—Story on Confl. § 391 ; Swift v. Fitz-
hugh, 9 Port. 39 ; Inge v. Murphy, 10 Ala. 894 ; Broughton v.
Adams, 13 ib. 731 ; Lyde v. Taylor, 17 Al. 270.

PARSONS, J.—This case has been argued upon our statute
.of frauds. The counsel for the plaintiff in error does not con-
tend that there is any difference under that statute, between
wills and deeds, in respect to the necessity of registration in this
:State. But he contends that if the property be brought into
.this State by a tenant for life holding under a deed, or a will,
made beyond this State, the same must be recorded here accord-
ing to the statute, as if the will or the deed had been made
here, and the property conveyed had been here. The substance
.of his argument is, that the statute operates upon the possession
merely, while held in this State, and its effect after three years
possession here by the tenant for life, without any registration
of the deed or will, is merely to postpone the remainderman to
the creditors of the tenant for life, or to create a preference
.over the remainderman, in favor of a *bona fide* purchaser from the
.tenant for life—to hold otherwise, that is to exempt foreign deeds
.and wills from the operation of the statute, which acts upon the
possession in this State alone, without violating the original title
or rights of the remainderman, to the prejudice of our own citi-
zens, and therefore not required by considerations of justice or
comity. For several years I have been aware of some of the
authorities upon which the counsel relies, and I have occasion-
ally felt the force of the reasoning stated.

The reasoning is, however, not all on one side. The court of
.appeals of Kentucky appears, from the cases cited by the coun-
.sel for the plaintiff in error, to have held different opinions at
.different periods, upon the general question with respect to fo-
.reign wills. But here the proposition as a general proposition,
has been repeatedly and uniformly held, that our statute does not

Turner v. Fenner et als.

extend to a deed executed beyond this State, although the pro-
perty may afterwards be brought and held here.—Catterlin v.
Hardy, 10 Ala. 511; Inge v. Murphy, ib. 885; Adams v.
Broughton, 13 Ala. 731-747 & 748; Lyde et al. v. Taylor, et
al. 17 Ala. 270.   In some of the cases it is suggested that there
might be exceptions to the general rule, but those suggestions
can have no application to this case, and therefore, we do not
dwell upon them.   If the general rule, which is so fully settled
here, be wrong, it is better to adhere to it notwithstanding,
than to violate rights which have grown up under it, as it has
become a rule of property.   Although the testator made his will
in North Carolina, and resided and held the property there,
which is now in controversy, and his will was proved and estab-
lished there, (and it may be added that his executor resided and
assented to this legacy there, and also, that this property was
allotted on a division under a judicial proceeding there to Robert
Fenner, as the tenant for life,) yet it is contended, that as Ro-
bert Fenner, the tenant for life, and his children, the remain-
dermen, resided and continued to reside in this State, the case
should form an exception to the general rule.   But such an ex-
ception, we think, would be inconsistent with the rule itself, and
therefore inadmissible.   The particular estate, as well as the
remainder, had its inception, and was completed there.   The
will, the assent of the executor, &c., had complete effect there,
under the laws of that State, without the slightest aid or influ-
ence of our laws.   There, as has been said, the property was,
and the testator lived and died.   Lord Loughborough said, "It
is a clear proposition, not only of the law of England, but of
every country in the world, where law has the semblance of
science, that personal property has no locality.   The meaning
of that is, not that personal property has no visible locality, but
that it is subject to that law which governs the person of the
owner.   With respect to the disposition of it, with respect to
the transmission of it, either by succession or the act of the par-
ty, it follows the law of the person.   The owner in any country
may dispose of his personal property. If he dies, it is not the law
of the country out of which he was a subject, that will regulate
the succession.   For instance, if a foreigner having property in
the funds here, dies, that property is claimed according to the
right of representation given by the law of his own country.   In

24

the case of Pipon v. Pipon, Ambl. 25, a party had possessed himself of a debt which was due to the intestate, a subject of Jersey, and whose personal property was therefore governed by the law of Jersey. Lord Hardwicke was applied to by his other relations, resident in England, stating that they should be excluded from a share according to the distribution of Jersey, but that they should be entitled to a share according to the distribution of England; and they therefore prayed by their bill, that the administratrix might be restrained from taking the property to Jersey. Lord Hardwicke very wisely and justly determined that he would not restrain the administratrix, he would not direct in what manner she was to dispose of the property, or to distribute it. Having acquired the right to it, she was to distribute it according to the law which guided the succession to the personal estate of the intestate."—Sill v. Worswick, 1 H. Black. 690. As to personal property, the law of the owner's domicil is in all cases to determine the validity of every transfer, or other disposition made by the owner, whether it be *inter vivos* or *post mortem*, unless there is some positive or customary law of the country where it is situate, providing for special cases, or from the nature of the particular property, it has a necessarily implied locality, as contracts respecting the public funds, stocks, &c.—Story's Conflict of Laws, § 883. There is an exception to the general rule, of contracts made in view of the laws of another country, but that is not material here. If the property in question had been in this State when the will took effect, or if the will had required it to be brought here, the case would have been varied in its facts, but it is not necessary now to determine their effect. This case is clearly within the decisions of this court heretofore made.

The judgment is affirmed.