<hr/>

### Lafferty's Executor v. E. A. V. Murray and another.

See this case for a review of authorities upon the construction of the last clause of the second section of the statute of frauds, (O. & W. Dig., art. 937,) with reference to the question whether that clause is applicable to reservations, limitations, &c., of a use or property in goods, chattels, &c., created by deed or will executed and recorded in another State, whence the property was brought to this State by the holder of the particular estate.

It seems that the leading object of the statute, in the provision above referred to, was not to destroy entirely the rule of *caveat emptor;* but to prevent pretended loans, reservations, or limitations, and to defeat frauds by requiring the party in possession to exhibit his title upon the record.

In consideration of the policy of the act, and in view of the former adjudications of this court, it is *held* that the clause of the statute of frauds above referred to does not extend to fiduciary possessions, where the original limitation or remainder is evidenced by a will or deed duly recorded in the State from which the property was brought, when there is no person authorized to make demand and pursue the same by due process of law, or to assert, in any manner, an adversary claim.

It seems that the provision of the statute of frauds already mentioned, is not applicable to interests in remainder, &c., in goods and chattels, created by wills or deeds duly proved and recorded in other States where the property was then situated, and by whose laws the title had become completely vested.

APPEAL from Fayette.   Tried below before the Hon. Geo. W. Smith.

The appellees, on the 16th of January, 1857, instituted this suit against the appellant, for the recovery of two negroes and their hires.

Lafferty's Executor v. Murray.

The plaintiffs claimed the slaves sued for, under the provisions of the last will and testament of Lewis Bowdry, deceased, who died in Woodford county, State of Kentucky, in the year 1821. The will was probated and recorded in that county and State in May, 1824, and by its provisions the testator, after legacies to his wife, bequeathed to each of his six descendants one-sixth of his estate, with the condition or limitation that "if any of the heirs and representatives of this will should die without issue from their bodies to inherit their estates, then, and in that case, the property shall revert back to the surviving legatees to this will, and be divided as above."

Martha Bowdry, one of the legatees, married W. D. Lafferty in Kentucky, and in 1840 or 1841, removed with him to Texas, bringing with them a negro woman received under the will of Lewis Bowdry, which woman and one of her two sons were the property in controversy in this suit.

In January, 1846, W. D. Lafferty and his wife sold the negro woman and her two sons to J. C. Ragsdale, who, in October, 1846, sold the woman and one of her sons to W. D. Lafferty, and the other son in 1849, to A. L. Vail.

Mrs. Lafferty died February, 1855, having never had any issue, and W. D. Lafferty died the next year, when the two negroes in controversy came into the possession of his executor, W. F. Hodge, against whom this suit was brought.

The plaintiffs were the other surviving legatees of Lewis Bowdry, and claimed the slaves sued for under the clause of his will already quoted, in consequence of the death of Mrs. Lafferty without issue.

The defendant pleaded a general denial, limitations of two years, innocent purchaser for value without notice, with other matters; and specially that "the said plaintiffs are not entitled to recover herein, even if they ever had any right or claim to said property, because he says the claim set up to said property by said plaintiffs is in the nature of a 'reservation or limitation by way of condition, reversion, or remainder,' the possession of which property remained in the said Martha and W. D. Lafferty for twenty years after the said claim originated, and the same is by law fraudulent

and void as to purchasers, having never been recorded, as the law directs and requires, in Fayette county, nor in the State of Texas."

Verdict and judgment at the Spring Term, 1859, in favor of the plaintiffs for the negroes or their value, and for their hires since the death of Mrs. Lafferty. New trial refused, and defendant appealed.

*Tate & Shropshire*, for the appellant.

*W. G. Webb*, for the appellees.

MOORE, J.—The only question in this case worthy of consideration is, as to the proper construction of the last clause of the second section of the statute of frauds, which is in these words : "And in like manner, when any loan of goods and chattels or slaves shall be pretended to have been made to any person with whom, or those claiming under him, possession shall have remained by the space of three years, without demand made and pursued by due process of law on the part of the pretended lender; or when any reservation or limitation shall be pretended to have been made of a use or property, by way of condition, reversion, remainder, or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid; the same shall be taken as to the creditors and purchasers of the person aforesaid so remaining in possession, to be fraudulent within this act, and that the absolute property is with the possession, unless such loan, reservation or limitation of use or property were declared by will, or by deed in writing, proved and recorded as aforesaid." The inhibition with respect to loans being applied by the statute, in direct terms, to "goods and chattels or slaves," while as to reservations or limitations by way of condition, reversion, remainder, &c., it is only to "goods and chattels," a remainder, it is said by the appellees, after a life estate in slaves does not come within the law. The phraseology of the different members of the sentence may, perhaps, leave the matter in some doubt; but the object and spirit of the law would certainly lead to the conclusion,

that such titles come within its provisions. It will be observed that, in the first instance, the word "slaves" is connected with chattels by a disjunctive, and seems to be used in a synonymous sense with it, or as a word of apposition, while in the second the draftsman deemed, perhaps, its repetition in this manner unnecessary. But the view taken by us of another question, renders a decision of this point unnecessary; and we, therefore, refrain attempting a criticism of the language of the statute, or an exposition of its proper construction.

The appellees, who were the plaintiffs in the District Court, claim under the will of Lewis Bowdry, which was duly probated and admitted to record in Woodford county, State of Kentucky, on the 3rd day of May, A. D. 1824. It is conceded by all parties, that said Bowdry was a citizen of said county and State, at the time of his death; and that by the bequests of his will, a life estate in the property now in controversy became vested in his daughter, Martha or Patsy Bowdry, with a remainder upon her death without issue, to the appellees. It is, also, shown that Martha Bowdry and W. D. Lafferty, the appellant's testator, were married in the State of Kentucky, and held the property bequeathed to her by her father, in his will as aforesaid, until about the year 1840 or 1841, when they removed to this State, and settled in the county of Fayette; since which time, until the bringing of this suit, said negroes have been claimed and held by them and their vendees, in said county, under a claim of absolute right. Mrs. Lafferty died without issue in February, 1855; and it is, also, admitted that the will of Lewis Bowdry has never been recorded in this State.

Whether the purchasers from Lafferty and wife had actual notice of the nature of the title she acquired under the will is, in our view of the case, immaterial. The suit having been commenced within less than two years from the death of Mrs. Lafferty, the plaintiffs were undoubtedly entitled to recover, unless they were precluded by the clause of the statute of frauds, which we have quoted. The property having been held in this State by the tenant for life for more than three years, and the will not having been proven and recorded here, such must evidently be

the effect of this statute upon their title, unless, as the appellees maintain, it is not applicable to estates created by wills duly proved and recorded in another State, where the property was then situated, and by whose laws the title had become completely vested. This question presents for determination a legal problem of much importance and considerable difficulty; and one not altogether free from the embarrassment of conflicting decisions of courts justly eminent for learning, and equally entitled to our respect.

The question so far has remained an open one in this court, though it is claimed by both parties that it has been heretofore settled in accordance with their respective views by previous adjudications. A brief review of the decisions upon which they rely will, however, clearly demonstrate their error. On the part of the appellant, reference is made to the case of Grumbles v. Sneed, 22 Tex. R., 565. The point upon which that case turned was, that actual notice of the loan would not affect the title of the purchaser from the loanee. It is true, the loan commenced in the State of Alabama, but does not appear to have been recorded. It seems to have been a mere permissive possession for an indefinite time, and under these circumstances the possession of the loanee for three years, without record notice of the loaner's title, or demand made and pursued by due process of law, presents altogether a different case from that of the remainder-man under a will duly recorded in the State from which the property is brought by the tenant for life, and when it does not appear that this is done either with his knowledge or assent. If the construction of the statute now under consideration was applicable to that case, it was not adverted to by the counsel or in the opinion of the court, and can not, therefore, be regarded as settled by it.

On the part of the appellees, we are referred to the cases of Parks v. Willard, 1 Tex. R., 350 ; Edrington v. Mayfield, 5 Tex. R., 343 ; and Gamble v. Dabney, 20 Tex. R., 69. The titles sustained by the court in the first two of these cases are not such as is referred to by the clause of the statute of frauds now under consideration. They are embraced by the second clause of the same section which declares fraudulent all conveyances on con-

sideration not deemed valuable in law, unless by will or deed in writing, proved, &c., unless possession shall really and *bona fide* remain with the donee.    Although then there is a strong analogy in the questions involved in those cases and the one now before the court, and much of the reasoning of the court is strikingly applicable to it; yet, it must be admitted that the cases are by no means identical, and that the principle settled by them is, perhaps, only this, that when the gift is to a married woman and possession remains with herself and husband, though treated by him and held out to the world as his property, it will be said to have *bona fide* remained with the donee.    The case of Gamble v. Dabney was upon a deed to trustees for the support of the wife and children, with remainder to the children, recorded in the State where executed, but the property had not been in the State three years; and the observation, therefore, in the opinion, that if it had remained here for that time without a record of the deed, it could not have altered the case, can only be received with such weight as must be attached to any legal opinion from the eminent judge by whom it is expressed.

This clause of the statute of frauds seems to have been borrowed from the State of Virginia, where it was enacted in the year 1785.    It has also been incorporated into the statutes of most of the Southwestern States, in all of which it has undergone frequent judicial exposition.    And while it has, we believe, generally received the interpretation placed upon it by this court in the case of Grumbles v. Sneed, there seems to be some conflict in the reasoning upon which the different courts have gone, if not in their adjudications upon the question now before us.    This will be apparent from a brief annotation of some of the cases in which it has been discussed.    In Withers v. Smith, 4 Bibb, 170, decided in the year 1815, it is held by the Supreme Court of Kentucky that the possession of slaves within that State for the period fixed by the statute, under a loan made in Virginia, came within it; and such loan was declared void as to the creditors of the possessor.    And to the same effect is the case of Ferguson v. White, 1 Marsh., 5.    But in neither of these cases was the loan recorded in the State in which it was made, though it will be hereafter seen

that this was immaterial. On the other hand, it is held in the same court, and without reference to its previous decisions to which we have referred, that a failure to record a *will* in that State, which was made and recorded in Virginia, does not prevent the remainder-man, after the determination of the life estate, from a recovery of the property, although it had been held in that State by the tenant for life for much more than the statutory period, without notice by record or otherwise to the purchasers from him. (See Johnson v. Sevier, 4 J. J. Marsh., 140, and also Boone v. Dykes, 3 Mon., 530.)

Subsequently, the effect of the statute upon property conveyed by deeds duly recorded in Virginia, to trustees for the use of the wife and children, was brought under discussion, and in Blair v. Dade's Executors, (9 B. Mon., 61,) the court says : " Under our statute of frauds, a possession of slaves for five years has the effect, as to the creditors and purchasers of the person so remaining in possession, of uniting the absolute property with the possession, unless the character of the possession and the real condition of the property is declared by *deed* or *will* in writing proved and recorded as the statute requires. The object of this requisition is to make known to the public, the right which the person in possession has to the property, so that an apparent ownership may not give him a delusive credit, and induce a belief that he is the absolute owner of the property, when, in fact, it belongs to others. This object can only be attained by a record in this State. A record in Virginia will not have the desired effect, although whilst the parties reside there, such a record was necessary to give notice, and afford protection to citizens of that State. In the case of Ferguson v. White, (1 Marsh. 5,) it was held, that although the writing was executed out of the State, yet a possession of the property for the space of five years within the State, will have the vitiating effect of making void the pretended reservation, as to the creditors and purchasers of· the person, unless declared and recorded as required by the statute. And in the case of Davidson's Executor v. Nunnally, (3 B. Mon., 540,) it was decided that recording a deed of gift in Virginia, where the property and parties were at the date, does not dispense with the necessity of

recording it in Kentucky within five years, for the purpose of saving it from the operation of the statute of frauds, if the prop- erty be removed to this State."

And again it is said : " According to the plain import of the statute, the fact of being possessed of the property for the period of five years, has the operation of making fraudulent and void as to creditors and purchasers, all pretended reservations and limita- tions, either of the use or property, and unites the absolute property with the possession." No notice is taken in the opinion of the court of the cases of Johnson v. Sevier, and Boone v. Dykes, but unless a distinction can be made between a remainder created by will, and one by deed, they must be regarded as over- ruled by it. But neither the language of the opinion, nor the phraseology of the statute induce the belief that there is such a distinction. And the Supreme Court of Alabama, to whose de- cisions we will now advert, certainly make none, and do not understand the Kentucky cases as intending to do so.

In Turner v. Fenner, 19 Ala., 355, Parsons, J. says : " This case has been argued upon our statute of frauds. The counsel for the plaintiff in error does not contend that there is any difference under that statute, between wills and deeds, in respect to the ne- cessity of registration in this State. But he contends that if the property be brought into this State by a tenant for life, holding under a deed, or will, made beyond this State, the same must be recorded here according to the statute, as if the will or deed had been made here, and the property conveyed had been here. The substance of his argument is, that the statute operates upon the possession merely, while held in this State, and its effect after three years possession here by the tenant for life, without any registration of the deed or will, is merely to postpone the remain- der-man to the creditors of the tenant for life, or to create a pref- erence over the remainder-man, in favor of a *bona fide* purchaser from the tenant for life ; to hold otherwise, that is to exempt for- eign deeds and wills from the operation of the statute, which acts upon the possession in this State alone, without violating the original title or rights of the remainder-man, would result to the prejudice of our citizens, and therefore, is not required by consid-

erations of justice or comity. The reasoning is, however, not all on one side. The Court of Appeals of Kentucky appears, from the cases cited by the counsel for the plaintiff in error, to have held different opinions at different periods, upon the general question with respect to foreign wills. But here the proposition, as a general proposition, has been repeatedly and uniformly held, that our statute does not extend to a deed executed beyond this State, although the property may afterwards be brought and held here. (Catterlin v. Hardy, 10 Ala., 511; Inge v. Murphy, Ib., 885; Adams v. Broughten, 13 Ala., 731, 747, 748; Lyde, *et al.* v. Taylor, *et al.*, 17 Ala., 270.)"

But in the case of McCoy v. Odom, (20 Ala. 502,) which the next year came before the same court on a deed of gift made in the State of Georgia, Goldthwaite, J., as the organ of the court, says: "We are aware that the reasoning of this court, in the cases to which we have been cited by counsel for the plaintiff in error, Catterlin v. Hardy, 10 Ala. Rep., 511; Adams v. Broughton's admr., 13 Ala. Rep., 731, and Lyde v. Taylor, 17 Ala. Rep., 270, as also the case of Turner v. Fenner et al., 19 Ala. Rep., 355, deciding that the continuance of the possession for three years in this State without recording, does not affect the title of the remainder-man, as to creditors and purchasers from the party in possession, on the ground that in the particular cases referred to, the deed creating the remainder was executed in another State, is in opposition to the conclusions which we have attained; but we all concur that the reasons upon which those decisions are based cannot be sustained; and while we feel constrained to adhere to the rule established by them, we prefer to rest it upon the ground on which the decision of this court in Smith v. Ruddle, 15 Ala. Rep., 28, is placed, which restrains the meaning of the words ' absolute property,' as used in the second section of the statute of frauds, to the title which the lender had in the property." The previous decisions, it is true, are not expressly overruled by this case; yet its reasoning, like the last case to which we have referred in the Kentucky court, is incompatible with the principle in support of which they are invoked. And we can hardly say the

right of the remainder-man to recover without the record of the will there, is fully and definitely settled in either of those States.

The question has also been before the Supreme Court of Tennessee, and there seems to be no conflict in its decisions. The right of the remainder-man to recover, although there had been no record of the will under which he claimed, is held to be unquestionable. And it is placed upon ground that presents itself with much force, when we attempt to fix the scope that the legislature intended to give to our statute. In Loring v. Hunter, 8 Yerg., 32, the court say: "The statute clearly contemplated that the deed was to be registered in the county where the goods were at the time of the execution thereof. It does not, therefore, embrace a case where the limitation or reservation was made by deed or will in another State, where the goods were situated at the time. A foreign will could not lawfully have been recorded in this State, at the time of the enactment of the statute, nor for many years afterwards." This was certainly the case here when our statute of frauds was enacted; and unless the record of a certified copy from the State where the will is probated will satisfy the statute, which, however, the Supreme Court of Tennessee evidently regard as insufficient, such a requirement cannot still be complied with. Could it have been the intention of the legislature to make a provision which would produce the forfeiture of titles for the non-performance of an act that could not be lawfully done? That it is competent for the State, as is insisted by the courts in Alabama and Kentucky, in the cases from which we have quoted, to provide to what extent property within its limits shall be subject to execution, or in what manner, when brought within its jurisdiction, it is to be affected by certain acts, cannot be questioned. But we think we may safely conclude that it was not the intention of the law that it should operate upon titles which were completely vested, before the property was brought within our jurisdiction, and when, if this were not so, no means was provided to secure it against forfeiture. It is said, however, and we acknowledge that there is much force in the observation, that such titles emanating out of the State are equally, if not more directly, within the mischief for which the law was intended, than

those originating within it.   If the whole object of the statute, as
this objection seems to imply, was to protect creditors and pur-
chasers by notice of the limitation or reservation upon the title of
the party in the possession of the property, and clothed with its
apparent ownership, it would certainly present a powerful, if not
an insuperable obstacle, to the opposite construction of the law.
The leading object of the law, however, appears to be to prevent
pretended loans, pretended reservations or limitations, and not to
destroy entirely the rule of *caveat emptor ;* and to prevent the
possibility of frauds by requiring the party to show by written
and recorded evidence the origin of his title.   And so far as notice
was intended, it was intended to prescribe what should be legal
notice, not notice in fact.   If this last was the purpose of the law
the record of the deed or will would, most assuredly, be unneces-
sary, if the purchaser from the party in possession were otherwise
chargeable with notice.   Yet this is held in Grumbles v. Sneed, and
also in Alabama and Kentucky, not to affect his title.   For these
considerations, and supported by the analogous reasons in the cases
heretofore decided by this court, to which we have referred, we
feel justified in concluding that the statute does not extend to
fiduciary possessions, where the original gift, limitation or re-
mainder is evidenced by a will or deed duly recorded in the State
from whence the property is brought, and when there is no person
authorized to make demand and pursue the same by due process
of law, or to assert in any manner whatever an adversary claim.
The judgment is affirmed.

Judgment affirmed.